[S. F. No. 17606.   In Bank.   Mar. 9, 1948.]

DAVID M. BENJAMIN et al., Appellants, v. DALMO MANUFACTURING CO. (a Corporation), Respondent.

Wolff & Wolff and Norman Sanford Wolff for Appellants.

Hilary H. Crawford, Walter Slack and H. W. Glensor for Respondent.

SPENCE, J.—Plaintiffs appeal from a minute order and a written order setting aside a default and default judgment taken against defendant corporation. It is urged that the trial court abused its discretion in granting such relief under authority of section 473 of the Code of Civil Procedure. This point is well taken in the light of the record and the applicable legal principles governing our consideration of the propriety of the trial court's action.

On October 9, 1945, plaintiffs brought an action in the city and county of San Francisco to recover the purchase price of certain goods allegedly sold and delivered to defendant. Defendant's president and secretary were served, respectively, with copy of summons and complaint on December 10, 1945, in the county of San Mateo, the county of defendant's residence. Defendant having failed to appear in the action within the 30-day period allowed by law, plaintiffs six days thereafter—on January 15, 1946—caused defendant's default to be taken and formal judgment to be entered against it for the full sum sought in their complaint, $9,538.13, plus costs. On May 1, 1946, defendant served and filed a notice of motion to set aside the default. Supporting affidavits by defendant's president and secretary and a proposed verified answer accompanied the motion. No counteraffidavit was filed in opposition to defendant's showing. A hearing on the motion was had on May 9, 1946, at which time the trial court ordered the default judgment to be set aside and approved the filing of defendant's verified answer. A formal order was entered accordingly on May 15, 1946.

█ It is well settled that appellate courts have always been and are favorably disposed toward such action upon the part of the trial courts as will permit, rather than prevent, the adjudication of legal controversies upon their merits. (*Nicoll* v. *Weldon,* 130 Cal. 666, 667 [63 P. 63]; *Jergins* v. *Schenck,* 162 Cal. 747, 748 [124 P. 426]; *Downing* v. *Klondike Mining & Milling Co.,* 165 Cal. 786, 789 [134 P. 970]; *Waite* v. *Southern Pacific Co.,* 192 Cal. 467, 470 [221 P. 204]; *California National Bank of Sacramento* v. *El Dorado Lime & Minerals Co.,* 200 Cal. 452, 454 [253 P. 704]; *J. A. Vaughan Corp.* v. *Title Insurance & Trust Co.,* 123 Cal.App. 709, 711 [12 P.2d 117]; *Morgan* v. *Brothers of Christian Schools,* 34 Cal.App.2d 14, 15 [92 P.2d 925].) Apt expression of this attitude is found in *Jones* v. *Title Guaranty & Trust Co.,* 178 Cal. 375, at pages 376-377 [173 P. 586]: "This court has always looked with favor upon orders excusing defaults and permitting controversies to be heard upon their merits. Such orders are rarely reversed, and never 'unless it clearly appears that there has been a plain abuse of discretion.' (*O'Brien* v. *Leach,* 139 Cal. 220 [96 Am.St.Rep. 105, 72 P. 1004].)" So, too, it is stated in *Bonfilio* v. *Ganger,* 60 Cal.App.2d 405, at page 410 [140 P.2d 861]: "In California, following the general common law rule, to modify or vacate judgments during the term, the power of courts to control their judgments is regulated by statute specifying a time limit and leaving the matter to the discretion of the court in the interest of substantial justice to set aside its judgments. (Code Civ. Proc., sec. 473; *Olivera* v. *Grace,* 19 Cal.2d 570 [122 P.2d 564, 140 A.L.R. 1328]; *Bodin* v. *Webb,* 17 Cal.App.2d 422 [62 P.2d 155].)"

█ While a large amount of discretion is thus vested in the trial court in the matter of an application for the setting aside of a default judgment (*Gorman* v. *California Transit Co.,* 199 Cal. 246, 248 [248 P. 923]; *Waybright* v. *Anderson,* 200 Cal. 374, 377 [253 P. 148]; *Brill* v. *Fox,* 211 Cal. 739, 743 [297 P. 25]; *Kalson* v. *Percival,* 217 Cal. 568, 569 [20 P.2d 330]; *Beard* v. *Beard,* 16 Cal.2d 645, 647 [107 P.2d 385]; *Stub* v. *Harrison,* 35 Cal.App.2d 685, 689 [96 P.2d 979]; *Schoenfeld* v. *Gerson,* 48 Cal.App.2d 739, 742 [120 P.2d 674]; *Hadges* v. *Kouris,* 71 Cal.App.2d 213, 214 [162 P.2d 476]; *Fickeisen* v. *Peebler,* 77 Cal.App.2d 148, 151 [174 P.2d 883]), the ensuing decision must rest upon sound considerations consistent with the showing made for the relief

sought. (*Hughes* v. *Wright*, 64 Cal.App.2d 897, 901 [149 P.2d 392] ; *Elms* v. *Elms*, 72 Cal.App.2d 508, 513 [164 P.2d 936].) To this point it is cogently said in *Bailey* v. *Taaffe*, 29 Cal. 422, at page 424 : ''The discretion intended, however, is not a capricious or arbitrary discretion, but an impartial discretion, guided and controlled in its exercise by fixed legal principles. It is not a mental discretion, to be exercised *ex gratia,* but a legal discretion, to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice. In a plain case this discretion has no office to perform, and its exercise is limited to doubtful cases, where an impartial mind hesitates. If it be doubted whether the excuse offered is sufficient or not, or whether the defense set up is with or without merit *in foro legis,* when examined under those rules of law by which Judges are guided to a conclusion, the judgment of the Court below will not be disturbed. If, on the contrary, we are satisfied beyond a reasonable doubt that the Court below has come to an erroneous conclusion, the party complaining of the error is as much entitled to a reversal in a case like the present as in any other.'' This appears from the record to be such a situation, and it thus becomes our ''duty . . . to reverse the action of the trial court.'' (*Redding Gold & Copper Mining Co.* v. *National Surety Co.,* 18 Cal.App. 488, 490 [123 P. 544] ; *Dunn* v. *Standard Accident Insurance Co.,* 114 Cal. App. 208, 213 [299 P. 575].)

Here the motion for relief under section 473 of the Code of Civil Procedure was made on the ground that the ''default and the . . . default judgment were entered through the mistake, inadvertence, surprise and excusable neglect of the defendant and its officers, to wit, its Secretary and its President.'' From the supporting affidavits of these officers, which were essentially the same in content, it appears that the president, upon receipt of the copies of summons and complaint by him and by the secretary, directed the secretary —who was also his private secretary—to forward the papers immediately to defendant's attorney; that the secretary ''misunderstood'' the ''directions so given to her . . . and understood [the president] to say that she . . . was to file said papers in the office files''; that ''as a result of such misunderstanding'' the secretary ''failed to forward'' the papers to defendant's attorney; that neither of the affiant officers knew of the default ''until on or about January 16, 1946,'' when the president received a letter from defendant's attorney stating

that the latter had noticed that on the preceding day a judgment had been taken against defendant; and that the secretary thereupon forwarded the copies of the summons and complaint to defendant's attorney on January 17, 1946. Then follows the usual affidavit of merits on the part of each of the officers. As above stated, plaintiffs filed no counteraffidavit in contest of defendant's showing at the hearing of its motion.

From these considerations demonstrating that defendant's failure to appear in the action within the period prescribed by law was due to the inadvertent omission of defendant's officers, charged with the duty of responding to the legal process in due time, to notify defendant's attorney of the service made upon them, it may be conceded that there was reasonable ground for the trial court to excuse defendant's conduct to the point of entry of the default judgment. As defendant maintains in this regard with respect to its corporate officers: (1) the president's delinquency stemmed from his reliance upon his secretary to follow his forwarding instructions and his failure to anticipate her misunderstanding them, with the result that the process papers were placed in the office files; and (2) the secretary's delinquency stemmed in some measure from the perfunctory nature of her official position, so that while her failure to "read" and "heed" the summons served upon her constituted a neglect of duty (*Gillingham* v. *Lawrence*, 11 Cal.App. 231, 233-234 [104 P. 584]), whether or not it was "excusable" was primarily a question for the trial court's discretion (*Ross* v. *Ross*, 48 Cal. App.2d 72, 76 [119 P.2d 444]), particularly as related to her employee status. Factual situations generally similar to the present case in that they involved an erroneous filing in the office either of the defendant corporation (*Gorman* v. *California Transit Co., supra,* 199 Cal. 246, 248-249) or of the attorney (*Downing* v. *Klondike Mining & Milling Co., supra,* 165 Cal. 786, 788) have been deemed sufficient explanation for failure to make a seasonable appearance in defense of an action. The inadvertence of defendant's officers rested not on mere forgetfulness (*Slater* v. *Selover*, 25 Cal.App. 525, 527 [144 P. 298]) but on a misunderstanding in the execution of properly given instructions, a mistake "which might be easily made . . . without any culpable carelessness" on the part of the parties concerned. (*Downing* v. *Klondike Mining & Milling Co., supra,* 165 Cal. 786, 789.) As heretofore stated, the day following the president's receipt of notice

from defendant's attorney regarding the taking of the default judgment, the papers served upon defendant's respective officers were forwarded to the attorney in prompt correction of the prior oversight.

However, there now remains for consideration the matter of defendant's delay in instituting proceedings to set aside the default judgment. As above indicated, the default was known to defendant's officers the day after it was taken, and on the second day the process papers were mailed to defendant's attorney for attention, but no action was taken to open the default for a period of more than three months. So far as the record discloses, defendant furnished no explanation in the trial court, either by affidavit or testimony, for its dilatory procedure. The significance of this "time lag" stems from the provision of section 473 of the Code of Civil Procedure that application for relief thereunder "must be made *within a reasonable time,* in no case exceeding six months, . . ." (Emphasis added.) This time requirement is discussed in *Smith* v. *Pelton Water Wheel Co.,* 151 Cal. 394, at page 397 [90 P. 934], as follows: "The six months' limitation there provided is simply a limitation upon the power of the court to grant any relief, regardless of any question either as to the merits of the application, or as to whether or not the application was made within what might be held to be a reasonable time under the circumstances. Under this statute, in addition to being made within the six months' period, the application must be made within 'a reasonable time,' and what is a reasonable time in any case depends upon the circumstances of that particular case." While in "the determination of that question, a large discretion is necessarily confided to [the trial] court" (*Ibid.,* p. 398), there must be some showing—some evidence—as the basis for the exercise of such discretion. (Freeman on Judgments, (5th ed.) vol. I, § 291, pp. 576-577.) Instance of this rule is the case of *Shearman* v. *Jorgensen, supra,* 106 Cal. 483 [39 P. 863], where the attorney had "drafted an answer, but, through inadvertence, it was not served or filed," and "the causes for the inadvertency [were] not stated in the attorney's affidavit." Declaring such showing to be "wholly inadequate to meet the requirements of the statute," this court reversed the order setting aside the default judgment, stating its views therefor at page 485: "The reasons, and the causes, and the excuses for the inadvertence are the matters which concern the court, and these are not stated. Inadvertence in the abstract is no

plea upon which to set aside a default. The court must be made acquainted with the reasons for the inadvertence; and, if satisfactory, will act upon them and relieve from burdens caused by them; but, if the inadvertence is wholly inexcusable, as if it arises from gross negligence, the court will not look upon it kindly, and will have none of it.''

Courts do not relieve litigants from the effects of mere carelessness. Defendant has not cited, nor has independent research disclosed, any case in which a court has set aside a default where, in making application therefor, there has been an unexplained delay of anything approaching three months after full knowledge of the entry of the default. On the contrary, the proper procedure appears to involve the presentation of some explanation, by affidavit or testimony, of any extended delay, and the court then determines whether such explanation may be deemed sufficient to justify the granting of the relief sought. Illustrative of this procedure is the case of *Smith* v. *Pelton Water Wheel Co., supra,* 151 Cal. 394, where, in contrast to the situation here, an explanation was made in the trial court but the excuse—the illness of the attorney ''for over two months after learning of the default'' and the pressure of ''other business'' for several weeks thereafter—was deemed insufficient by the trial court. In affirming this ruling on the basis of the showing made in relation to the ''reasonable time'' requirement of the statute, this court pertinently observed at page 398: ''The delay of nearly four months in the matter of making the application, *after full knowledge of the facts,* accompanied by the failure to give any intimation to the opposing party of an intention to so apply, *certainly required some satisfactory explanation* to warrant a conclusion that the application was made within a reasonable time.'' (Emphasis added.)

Defendant relies heavily on the case of *Wolff & Co.* v. *Canadian Pacific Railway Co.,* 89 Cal. 332 [26 P. 825], because of its statement at pages 337 that ''where a delay'' in instituting proceedings to set aside a default judgment ''does not appear to have been injurious to [the] rights'' of the other party, ''the six months' limitation prescribed by the code should be considered as the only limit of reasonable time.'' In that case the application for relief under authority of section 473 of the Code of Civil Procedure was filed three days after the entry of the default judgment. Some five months thereafter a defect was discovered in ''the ap-

plication as first made" and "an amended application" was thereupon filed. Meanwhile the hearing had been delayed with the consent of both parties. In reviewing this situation the court significantly noted at page 336 that "the second application was, substantially, an amendment of the first . . .; and for the purpose of determining the question of diligence, must be so regarded." In so fixing the effective date, the "reasonable time" of the making of the application was not open to dispute—a distinct factual consideration bearing no resemblance to the present case where defendant, after learning of the default judgment, waited over three months before instituting proceedings to vacate it and until then, plaintiffs had no knowledge of its intention to so apply. But the quoted language to which defendant refers in the Wolff case was not necessary to the decision there made; and, in addition, it cannot be reconciled with the express wording of the statute so, upon that ground, it must be disapproved. While the statutory six-month limitation is "the standard or criterion in all cases" (*Smith* v. *Jones,* 174 Cal. 513, 516 [163 P. 890]; see, also, *Hollywood Garment Corp.* v. *J. Beckerman, Inc.,* 61 Cal.App.2d 658, 661 [143 P.2d 738]), as the measure of the court's jurisdiction to grant relief in any event, the "reasonable time" test stands as an independent consideration and in any given situation, its determination, within the maximum six-month period, "depends upon the circumstances of that particular case." (*Smith* v. *Pelton Water Wheel Co., supra,* 151 Cal. 394, 397.)

Defendant cites certain cases where relief from the burdens of a default judgment has been deemed proper despite an extended period of delay in making the requisite application, but in each instance there was an explanation of all the circumstances involved. Thus, in *Waite* v. *Southern Pacific Co., supra,* 192 Cal. 467, "defendant did not file its motion to vacate the default judgment until more than five months after it was entered" but "during most of this time defendant was acting upon its honest belief that the state court had no jurisdiction of the action" (p. 471), and the opposing parties were so contesting the point in the federal court. Moreover, "plaintiffs knew that it was for this reason that defendant did not file an answer in the state court" (p. 469), and defendant was continuing to deny liability on the claim on which the default judgment was based. Defendant "filed its motion [to open the default] within five weeks after the making of the order by the federal court remand-

ing the cause to the state court" (p. 471), and under the circumstances, showing plaintiffs' complete information as to defendant's position at all stages of the proceedings, the "delay [was] not such as [would] defeat [the] defendant's right to be relieved under section 473 of the Code of Civil Procedure." (P. 471.) Also, in *Bonfilio* v. *Ganger, supra,* 60 Cal.App.2d 405, the delay of almost six months by the defendants' attorney in filing the motion to vacate the default judgment did not preclude the granting of such relief. But again there was offered upon the presentation of the motion in the trial court a full explanation which would warrant the conclusion that "the [attorney's] neglect was excusable by reason of a change in the attorney's office personnel, as averred in affidavits." (P. 409.) While it is there said at page 410 that "[t]here is no claim that appellant has been prejudiced as a result of the order vacating the judgment, or injured as a result of delay in the application therefor," nowhere does it appear in the Bonfilio case, in support of defendant's position, that such consideration alone would constitute a sufficient basis for setting aside a default where the delay in bringing the necessary proceedings was unexplained or the excuse insufficient. On the contrary, it has been said that an "utterly unexplained delay" of some 10 weeks in moving for the statutory relief "establishes beyond peradventure the laches of the defendants." (*Glougie* v. *Glougie,* 174 Cal. 126, 131 [162 P. 118].)

Although where "the plaintiff files no counter affidavit and makes no showing that he has suffered any prejudice or that injustice will result from the trial of the case upon its merits, very slight evidence will be required to justify a court in setting aside the default" (*J. A. Vaughan Corp.* v. *Title Insurance & Trust Co., supra,* 123 Cal.App. 709, 711), such rule does not obviate a showing of compliance with the "reasonable time" requirement in making the motion. Thus in the cited case it appears that "respondents' motion" was made and the default "judgment was vacated on the very day upon which respondents first learned of its rendition" (p. 710), so that the matter of their "seasonable application" (p. 711) was not a correlative question in connection with the stated rule. But here an entirely different situation prevails. The conduct of defendant's corporate officers in excuse for their inadvertence bearing upon the entry of the default judgment and their prompt action thereafter in mailing the

process papers to defendant's attorney are fully presented in the record, but beyond that point there is deep silence. Defendant argues that "if there was a time lag, between the time the papers were forwarded to the attorney and the time when the proceeding was commenced, it was no fault of the defendant." However, while "courts . . . are somewhat loath to penalize a litigant on account of some omission on the part of his attorney, particularly where the litigant himself has acted promptly and has relied . . . upon the attorney to protect his rights" (*Stub* v. *Harrison, supra,* 35 Cal.App. 2d 685, 689-690), the litigant must plead the excusable mistake or neglect on the part of his counsel as a ground for vacating a judgment by default. (*Fickeisen* v. *Peebler, supra,* 77 Cal.App.2d 148, 150-151.) Although "the law ordinarily charges the litigant with the negligence of his agent, namely, his attorney" (*Bonfilio* v. *Ganger, supra,* 60 Cal.App.2d 405, 407), in the measurement of their respective remissness "the same rules" prevail (*Morgan* v. *Brothers of Christian Schools, supra,* 34 Cal.App.2d 14, 18) in guidance of the trial court's determination of the matter upon the basis of the showing made. (*O'Brien* v. *Leach, supra,* 139 Cal. 220, 222-223; *Morgan* v. *Brothers of Christian Schools, supra,* 34 Cal.App.2d 14, 18; *Stub* v. *Harrison, supra,* 35 Cal.App.2d 685, 690; *Bonfilio* v. *Ganger, supra,* 60 Cal.App.2d 405, 407-409.) So here, in view of the statutory provision that the "application . . . must be made within a reasonable time" (Code Civ. Proc., § 473), the circumstances occasioning the attorney's delay of more than three months before the institution of these proceedings should have been presented in support of defendant's motion for relief. While no counteraffidavit was filed by plaintiffs showing that they would be prejudiced by the setting aside of the default judgment, none was necessary until defendant had at least made some excuse for the delay in question. (*Bruskey* v. *Bruskey,* 4 Cal.App.2d 472, 479 [41 P.2d 203]; *Elms* v. *Elms, supra,* 72 Cal.App.2d 508, 519.) To hold otherwise—that in the absence of any explanation a delay of more than three months in undertaking to open a default can be excused—would empower the trial court to dispense with the "reasonable time" requirement of the statute. In short, as is said in *Ross* v. *San Diego Glazed Cement Pipe Co.,* 50 Cal.App. 170, at page 173 [194 P. 1059], where there was likewise a failure to show "reasons or causes or excuses for the inadvertence or negligence of the attorney" in the premises:

"Regrettable as the circumstance may be, the stubborn fact remains that there is in the record no evidence sufficient to justify an order setting aside the judgment or default in this case."

The orders subject of this appeal are reversed.

Gibson, C. J., Edmonds, J., Traynor, J., and Schauer, J., concurred.

CARTER, J.—I dissent.

The majority of this court has again seen fit to usurp the function and power of the trial court in the exercise of a discretion exclusively committed to the latter court by the statutory law of this state as construed in a legion of court decisions.

It is indeed unfortunate that this court should at this time render a decision such as this, designed to inspire and encourage appeals from all discretionary orders and decisions of trial courts regardless of merit. It has almost reached a point where a majority of this court has adopted the policy of substituting its own discretion for that reposed by statute in the trial court. Manifestly, in this field, no rule or standard can be established as a yardstick to guide the trial judge in the exercise of his discretion. No two cases are exactly alike. Each case has its distinguishing features. Trial judges are presumed to be intelligent, honest, and fair-minded individuals. They have a grave responsibility in cases of this character. The statute has reposed in them an exceptionally broad power. The power to grant relief from default. The statute has fixed the limit of that power. Within that limit it must be exercised wisely, reasonably and fairly, with the view of advancing the administration of justice. All this a trial judge is presumed to have done when he exercises his discretion in ruling on an application for relief from default under section 473 of the Code of Civil Procedure. The ruling comes before an appellate court fortified with this presumption. The duty of the appellate court is to give full effect to this presumption. The question to be determined by the appellate court is not what it would have done had it been sitting in the place of the trial judge, but whether from the record it can be said that the trial judge failed to act wisely, reasonably and fairly in view of what was presented to him in support of the application. If such failure does not clearly and unmistakably appear, it cannot be said

that the trial judge abused his discretion, and his decision should be affirmed.

What does the record disclose in the case at bar? The majority opinion concedes that the showing of mistake, inadvertence, surprise, or excusable neglect was adequate to justify the order relieving the defendant from its default. But the majority assert that the application was not timely made and reverse the order granting relief on this ground.

While I concede that application for relief from default under section 473 of the Code of Civil Procedure must be timely made, the determination of this issue is also within the discretion of the trial judge, and the same considerations are involved as in the determination of any other issue arising on the hearing of such an application. Said section provides that such application "must be made within a reasonable time, and in no case exceeding six months, after the judgment, order, or proceeding was taken." However, what is a reasonable time must depend somewhat upon the circumstances of each particular case, and is not definitely determined further than that it will not extend beyond the maximum period allowed by the terms of the statute. (14 Cal.Jur., § 110, p. 1065; *Consolidated Construction Co.* v. *Pacific Electric Ry. Co.,* 184 Cal. 244, 247-248 [193 P. 238]; *People* v. *Temple,* 103 Cal. 447, 453 [37 P. 414]; *In re Dahnke,* 64 Cal.App. 555, 561 [222 P. 381].) In other words, while the statutory six-month limitation is "the standard or criterion in all cases" (*Smith* v. *Jones,* 174 Cal. 513, 516 [163 P. 890]; see, also, *Hollywood Garment Corp.* v. *J. Beckerman, Inc.,* 61 Cal.App.2d 658, 661 [143 P.2d 738]), the applicant in seeking relief within that period must also not be guilty of laches. (*Glougie* v. *Glougie,* 174 Cal. 126, 131 [162 P. 118]; see, also, Freeman on Judgments (5th ed.), vol. I, § 270, p. 537.) In legal significance, laches is not mere delay, but delay that works a disadvantage of another. (10 Cal.Jur., § 62, p. 523.) The cases cited by defendant furnish apt illustration of this point of distinction in relation to the trial court's exercise of discretion in the opening of defaults. For example, in *Smith* v. *Pelton Water Wheel Co.,* 151 Cal. 394, 397 [90 P. 934], a case cited in the majority opinion, an order refusing to vacate a default judgment was affirmed where there was not only a "delay of nearly four months in the matter of making the application, after full knowledge of the facts, accompanied by the failure to give any intimation to the opposing party of an intention

to so apply," but "[t]he evidence was also sufficient to support a conclusion upon the part of the lower court that relief could not be granted to defendant after [the] long delay without injuriously affecting plaintiff's rights." (P. 398.)

But "[w]here a delay has been assented to by the other party, or does not appear to have been injurious to his rights, the six months' limitation prescribed by the code [§ 473] should be considered as the only limit of reasonable time. In the matter of opening defaults, much is confided to the discretion of the trial court. (*Dougherty* v. *Nevada Bank,* 68 Cal. 275 [9 P. 112]; *Chamberlin* v. *County of Del Norte,* 77 Cal. 151 [19 P. 271].) And where the circumstances are such as to lead the court to hesitate, it is better to resolve the doubt in favor of the application, so as to secure a trial and judgment upon the merits. (*Watson* v. *S. F. & H. B. R. R. Co.,* 41 Cal. 17; *Cameron* v. *Carroll,* 67 Cal. 500 [8 P. 45]; *Lodtman* v. *Schluter,* 71 Cal. 94 [16 P. 540].)" (*Wolff & Co.* v. *Canadian Pacific Ry. Co.,* 89 Cal. 332, 337 [26 P. 825].) In accord, see *Waite* v. *Southern Pacific Co.,* 192 Cal. 467, 471 [221 P. 204].

In the present case a period of over three months elapsed before proceedings were undertaken to open the default herein, although within two days after entry of the default judgment and immediately upon learning of that fact defendant's president had the process papers forwarded to defendant's attorney for action. No explanation for this "time lag" was given at the hearing of defendant's motion, and plaintiffs urge that in view of such unexplained delay the trial court had no basis for setting aside the defendant's default. But there is no claim that in the presentation of their case plaintiffs have been prejudiced as a result of the delay in the application for the order vacating the default judgment. As above stated, defendant's verified answer was served with the notice of motion and became a part of the moving papers. (*Beard* v. *Beard,* 16 Cal.2d 645, 649 [107 P.2d 385]; *Waite* v. *Southern Pacific Co.,* 192 Cal. 467, 471 [221 P. 204]; *Morgan* v. *Brothers of Christian Schools,* 34 Cal.App.2d 14, 18 [92 P.2d 925].) In deciding the motion, the trial court undoubtedly considered all the facts in the case as shown by the record, including the cause of action set forth in the complaint, the proceedings in applying for judgment, the amount of the judgment in favor of plaintiff, as well as the affidavits filed and the verified answer showing

"upon its face a good defense on the merits." (*Bonfilio* v. *Ganger*, 60 Cal.App.2d 405, 410 [140 P.2d 861].) While defendant's attorney, after knowledge of the entry of the default judgment and prompt receipt of the papers served on defendant's officers, apparently was remiss in the ensuing delay of more than three months before filing the motion for relief, such single consideration does not determine the impropriety of the trial court's ruling in favor of defendant. Courts are "loath to penalize a litigant on account of some omission on the part of his attorney, particularly where the litigant himself has acted promptly and has relied . . . upon the attorney to protect his rights." (*Stub* v. *Harrison*, 35 Cal.App.2d 685, 689-690 [96 P.2d 979].) Although the showing made in support of defendant's motion was not in all respects of the strongest character by reason of the unexplained delay in question, yet in view of the entire record, it cannot be said that there were not sufficient grounds for setting aside the default in conformity with the oft-declared policy of the law to favor a trial on the merits. The motion was made well within "the extreme limit of six months allowed by section 473 of the Code of Civil Procedure" and "within a reasonable time" as that limitation has been correlated with the "circumstances of the particular case" (*Wolff & Co.* v. *Canadian Pacific Ry. Co., supra,* p. 337), so that the ruling of the trial court may not be classified as an abuse of discretion. As is said in *Hecq* v. *Conner*, 203 Cal. 504, at pages 509-510 [265 P. 180]: *"It is only in extreme cases that an appellate court will interfere with the action of a trial court in refusing or granting an order of this character* . . . 'Any doubt that may exist should be resolved in favor of the application to the end of securing a trial upon the merits.' (*Jergins* v. *Schenck*, 162 Cal. 747 [124 P. 426]; *Savage* v. *Smith*, 170 Cal. 472 [150 P. 353].) . . . '*All presumptions will be indulged in favor of the correctness of the court's action, and the burden in all cases is upon the appellant to make it appear that its discretion was abused in making the order.' (Moore* v. *Thompson*, 138 Cal. 23, 26 [70 P. 930, 932].)" [Emphasis added.] The cases relied upon by the majority opinion disclose nothing at variance with the legal principles governing appeals of this character, nor is there such similarity of facts as to make the decisions controlling here.

As before stated, by reversing the order of the trial court in this case, the majority has usurped the function and

power of the trial court. It has placed itself in the roll of the trial judge, and exercised its discretion the same as if it had been sitting in his place. In so doing, it has not performed its duty as a reviewing court by failing to pass on the only question presented, to wit: Did the trial judge abuse his discretion in granting the relief prayed for? Had the majority performed its plain duty as a reviewing court, the order here under review would be affirmed.

Decisions such as this encourage appeals from every order of this character because the determination of the trial court is placed at naught, and the litigant feels he is justified in taking the chance that the discretion of the reviewing court will support his position. Thus, appeals are multiplied and our appellate courts are clogged with cases involving only procedural matters which do not involve the merits of the controversy. Nothing short of a clear and unmistakable abuse of discretion amounting to arbitrary and capricious action on the part of the trial court should be considered as sufficient to justify a reversal in a case of this character, and it is not even intimated in the majority opinion that anything like this occurred in the case at bar.

For the foregoing reasons I would affirm the order appealed from.