[Civ. No. 4944.   Fourth Dist.   Mar. 1, 1955.]

WALTER OSBORN, JR., Respondent, v. VIRGINIA PATRICK OSBORN, Appellant.

Jerry Giesler and Rexford D. Eagan for Appellant.

Vizzard, Baker & Sullivan and James Vizzard for Respondent.

MUSSELL, J.—The motion to set aside the default herein was made pursuant to the provisions of section 473 of the Code of Civil Procedure and upon the grounds that the judgment was taken against defendant by reason of mistake, inadvertence, surprise and excusable neglect.   The principal

question for our determination is whether the trial court abused its discretion in denying the motion.

On June 16, 1953, plaintiff filed this action for divorce in Kern County. He was unable to obtain service of summons in California and after an order of publication had been secured, personal service of the summons and complaint was made on the defendant in Clark County, Nevada, on July 30, 1953. On September 2, 1953, the cause came on regularly for hearing in the Superior Court in said Kern County, California, and the default was entered by order of court. Evidence was produced by the plaintiff and the court granted him an interlocutory decree of divorce on the ground of extreme cruelty. The decree was filed on September 3, 1953.

On January 14, 1954, defendant filed a notice of motion to set aside the default judgment and based her motion on the files in the action and on her affidavit, which was filed with her demurrer to the complaint. She states in her affidavit that starting with June 26, 1953, her attorneys conducted extensive negotiations with plaintiff's attorneys for a settlement of her property rights and that such negotiations were still being conducted at the time of the entry of the default; that she and her attorneys were led to believe that no default would be entered pending such negotiations for settlement; that on or about August 26, 1953, she submitted an offer of settlement to plaintiff and on August 29, 1953, plaintiff submitted a counteroffer; that while she and her attorneys were considering said counteroffer, plaintiff caused defendant's default to be entered on September 1, 1953, and caused the matter to be placed on the calendar for hearing on September 2, 1953; that she refrained from entering any appearance in said action, relying upon the representation that no default would be entered until the property settlement agreement between the parties had been completely executed; that she first learned of the entry of her default on September 8, 1953; that she was without funds to engage counsel and was unable to secure such services until January 4, 1954.

Affidavits in opposition to defendant's motion were filed by plaintiff and his attorney, James Vizzard. Plaintiff avers in his affidavit that the parties separated on June 10, 1953; that immediately thereafter a firm of attorneys engaged by defendant contacted plaintiff for the purpose of attempting to negotiate a property settlement agreement; that plaintiff

was informed by his attorney that defendant demanded $25,000 in cash, plus other personal property of the value of several thousands of dollars; that plaintiff offered to open his books and records to defendant's attorneys so that they could investigate his financial records; that before this offer was accepted defendant changed attorneys and another attorney contacted Mr. Vizzard and recommended a settlement in the neighborhood of $10,000; that there was an attempt by Mr. Vizzard to enter into further negotiations with this attorney but Mr. Vizzard was informed that this attorney no longer represented the defendant; that affiant then filed the divorce action and attempted to serve a copy of the summons and complaint on defendant in Bakersfield but found that she had gone to Las Vegas, Nevada; that he secured the services of a detective and had defendant personally served with a copy of summons and complaint in Las Vegas; that affiant then carried on negotiations with a firm of attorneys in Las Vegas who were then representing the defendant; that affiant prepared a property settlement agreement during the month of August, 1953; that on August 29, 1953, affiant wrote to defendant's attorneys, Mr. Goldwater and Mr. Jones, advising them that Mr. Vizzard was away on vacation and that the property settlement agreement was being forwarded for the signature of the defendant; that at that time defendant's time to appear had either expired or was about to expire and plaintiff notified Mr. Jones that in any event he intended to go ahead with his California action and had left instructions with his attorney's office that a default be taken and entered at once; that in accordance with said instructions defendant's default was entered; that Mr. Vizzard returned to his office on September 1, 1953, and informed plaintiff that he, Vizzard, had a telephone conversation with Mr. Jones that day and desired plaintiff to contact Mr. Jones personally and notify him that a default was being entered; that plaintiff then called Mr. Jones by telephone and notified him that a default was being entered; that Mr. Jones stated that he could not reach or find his client but presumed from former conversations that the property settlement agreement would be acceptable to her; that she would contact him and he would further inform her that if she were not willing to actually execute said agreement, he would tell her there was a procedure to attempt to set aside an interlocutory decree if such procedure was promptly followed; that there is no community property of the parties except affiant's one-half inter-

est in certain office fixtures, furniture and library, not to exceed the sum of $1,500; that affiant's community earnings have never exceeded $8,500 per year, which said sum has been expended each year for living expenses; that on October 1, 1953, defendant called plaintiff by telephone and stated that she wished to negotiate a settlement and was not satisfied with the agreement prepared by plaintiff and sent to her attorneys in Las Vegas; that plaintiff saw defendant again on October 14, 1953, and turned over to her certain of her personal property.

Mr. Vizzard stated in his affidavit that on June 16, 1953, he had a telephone conversation with Morris B. Chain who then represented defendant and Chain stated that he would recommend a settlement in the neighborhood of $10,000; that on June 18th affiant was informed by Chain that he no longer represented defendant; that on or about June 26th, affiant received a letter from a firm of attorneys in Las Vegas in which Mr. Goldwater stated that they were representing the defendant; that he was informed that plaintiff had filed suit for divorce in California; that "Mrs. Osborn agrees that a divorce should be had" but was concerned with her property rights; that "if it becomes necessary Mrs. Osborn will enter her appearance in the California action"; that Mrs. Osborn was willing to make a settlement of her property interests for $20,000 cash, attorneys' fees and her present expenses; that on July 2, 1953, Mr. Vizzard replied to this letter, stating plaintiff's financial situation and that his client made an offer of $5,000 and the automobile registered in defendant's name to settle the matter and that this offer would remain open for a reasonable period of time; that he would be glad to recommend that plaintiff's books and records be made available for examination; that on July 31, 1953, affiant informed Mr. Goldwater that plaintiff's previous offer of settlement would not stand any longer; that on or about June 26, 1953, affiant received a letter from Mr. Goldwater stating that Mrs. Osborn had rejected plaintiff's offer of settlement; that she planned to defend the action brought by Mr. Osborn in California and that as far as he knew she was "proceeding in California"; that on August 25, 1953, affiant had a telephone conversation with Mr. Goldwater in which affiant stated that plaintiff was not disposed to grant any continuance in the matter for further negotiations and that the instructions to affiant were to take a default judgment whenever the time to appear expired, but affiant would see

that Mr. Goldwater was notified at the time preparations were being made to take such default; that on September 1, 1953, affiant was contacted on long distance telephone by Mr. Jones, as associate of Mr. Goldwater; that Mr. Jones was then informed that a default was being prepared but that affiant would call or instruct plaintiff to call him personally before he went to court to present said default; that he requested plaintiff to call Mr. Jones and notify him that the hearing would be put on the calendar as soon as possible; that on September 2, 1953, affiant was informed that the matter had been placed on the calendar for hearing on that day; that he then proceeded to court to have the matter heard; that on September 2, 1953, he mailed a copy of the interlocutory decree to Mr. Jones; that the defendant has not at any time been misled and that her failure to file an appearance in the action or to take prompt action in setting aside the default has been entirely due to her neglect.

Appellant argues that her affidavit, together with the counteraffidavits of respondent and his attorney and the files and records in this action present a proper case for relief under section 473 of the Code of Civil Procedure and that the denial of appellant's motion to vacate the interlocutory decree and for leave to file written appearances constitutes an abuse of judicial discretion on the part of the trial court. We are not in accord with these contentions.

■ It is a settled principle of law that motions for relief from default under the remedial provisions of section 473 of the Code of Civil Procedure are addressed to the sound discretion of the trial court and in the absence of a clear showing of abuse will not be interfered with by an appellate tribunal. (*McNeil* v. *Blumenthal,* 11 Cal.2d 566, 567 [81 P.2d 566]; *Beard* v. *Beard,* 16 Cal.2d 645, 647 [107 P.2d 385]; *Tearney* v. *Riddle,* 64 Cal.App.2d 783, 787 [149 P.2d 387].) In *Couser* v. *Couser,* 125 Cal.App.2d 475, 477 [270 P.2d 496], it is said that where the evidence (including the affidavits) is conflicting the court has a sound discretion to grant or to deny a motion under section 473 of the Code of Civil Procedure. In the absence of a clear showing of abuse of discretion, the order will not be interfered with on appeal. In *Kester Motors, Inc.* v. *Haddad,* 109 Cal.App.2d 369, 371-372 [240 P.2d 1011], this court held that:

"While it is the policy of the law that every case should be litigated upon its merits, and that because of this the reviewing court will scan more closely orders denying relief

and are more prone to reverse orders of denial, it is the fundamental rule that an application to set aside a default or grant relief therefrom, rests so largely in the trial court's discretion that it will not be disturbed on appeal unless it shall be made clearly to appear that there was an abuse of discretion, and this general rule has not been relaxed by the rule that a discretion is better exercised when it tends to bring about a decision of the case on its merits. (*Ingrim* v. *Epperson*, 137 Cal. 370, 372 [70 P. 165]; *Anglo California Trust Co.* v. *Kelly*, 95 Cal.App. 390, 391 [272 P. 1080]; *Hughes* v. *Wright*, 64 Cal.App.2d 897, 903 [149 P.2d 392].)''

In *Baratti* v. *Baratti*, 109 Cal.App.2d 917, 921 [242 P.2d 22], it is held that to obtain relief a defendant must have acted within a reasonable time; that a party will not be relieved from his default unless he shows he acted in good faith and that his mistake, inadvertence, surprise or excusable neglect was the actual cause of his failure to appear; that in a matter in which an issue is tried on affidavits, the rule on appeal is that those affidavits favoring the contentions of the prevailing party establish not only the facts stated therein but also all facts which reasonably may be inferred therefrom; that ''No showing was made to excuse defendant's failure to file her motion for relief until May 21, 1951, after consulting with her present attorney on February 21, 1951. In *Benjamin* v. *Dalmo Mfg. Co.*, 31 Cal.2d 523, the court said, page 529 [190 P.2d 593]: 'Defendant has not cited, nor has independent research disclosed, any case in which a court has set aside a default where, in making application therefor, there has been an unexplained delay of anything approaching three months after full knowledge of the entry of the default.' Courts do not relieve litigants from the effects of mere carelessness.''

In the instant case the notice of motion to set aside defendant's default was filed on January 14, 1954, nearly four and one-half months after the filing of the interlocutory decree on September 2, 1953, and the record supports the trial court's implied finding that defendant failed to file her motion within a reasonable time. It appears from the affidavits of plaintiff's attorney that on August 25, 1953, Mr. Vizzard informed Mr. Goldwater that plaintiff was not disposed to grant any continuance in the matter for further negotiations and that his instructions were to take a default judgment whenever the time had expired. Defendant and her attorneys were thus notified that plaintiff intended to

enter defendant's default when the time to appear expired and there is susbtantial evidence to support the trial court's determination that there was no representation, as claimed by defendant, that a default would not be entered until a property settlement agreement had been completely executed. The record does not show that defendant or any of her attorneys requested an extension of time to answer or file an appearance before the default was entered.

Appellant argues that in the interests of justice she should be granted her day in court. However, the record shows that she agreed that a divorce should be had and so informed her attorneys. It is evident that she was not seeking to preserve the marriage but was attempting to secure an advantageous property settlement agreement. In this connection the affidavits show that she received offers of settlement which were not unreasonable in view of the facts set forth in plaintiff's affidavit, and she declined to accept these offers. The facts must be here viewed from the standpoint of those adduced by the prevailing party (*Couser* v. *Couser, supra,* 477), and we cannot here hold as a matter of law that an abuse of the trial court's discretion was shown.

The order is affirmed.

Barnard, P. J., and Griffin, J., concurred.