[Civ. No. 29743. Second Dist., Div. One. Nov. 10, 1966.]

HERBERT H. SHIELDS, Plaintiff and Respondent, v. ISADORE SIEGEL, Defendant and Appellant.

Parker, Stanbury, McGee, Peckham & Garrett and White McGee, Jr., for Defendant and Appellant.

Jack Corinblit and Sidney Tepper for Plaintiff and Respondent.

LILLIE, J.—Defendant appeals from an order denying his motion to set aside his default and the ensuing default judgment (money damages for personal injuries) upon the equitable grounds of extrinsic accident and mistake; a motion for relief under section 473, Code of Civil Procedure, had previously been denied, but no appeal is prosecuted from such latter order. ▇▇▇ It is contended that the court under all the circumstances abused its discretion in rendering the order now challenged.

▇▇▇ The sequence of relevant events follows: On March 16, 1962, plaintiff, then employed by the City of Los Angeles, was riding on the right rear platform of a truck engaged in collecting rubbish. The truck was being driven west in an alley about 18 feet in width; defendant was driving east on the north side of the same alley. Plaintiff's foot was crushed when the vehicles collided. Defendant at the time of the above happening was insured with Allstate Insurance Company under a policy with a $10,000 limit for bodily injury to any one person. Six weeks later, on April 26, 1962, one Santoorgian, a claims examiner employed by Allstate, wrote plaintiff's attorney, Mr. Tepper, denying plaintiff's claim against their insured.

Suit was commenced on November 16, 1962, and defendant served with process on November 21 of that year. No appearance having been made by him, defendant's default was entered on January 7, 1964; after a hearing on the default, the court entered judgment against defendant in the sum of $60,000 plus costs. Against this judgment plaintiff's employer has a lien for $17,000 representing medical expenses already incurred.

Nine months later, on October 6, 1964, plaintiff's attorney, Sidney Tepper, telephoned defendant, advising him that "a large judgment" had been taken against him by default. Defendant told Tepper that he had delivered the summons and complaint to Allstate and was advised by the company that it

"would take care of the entire matter." (According to defendant's declaration, delivery of the summons and complaint was made the day after service thereof.)

■ Although defendant further declared that he informed Allstate of Tepper's telephone call the day after it was received, no formal action to set aside the default was taken until November 27, more than seven weeks subsequent to defendant's conversation with Tepper; such action was taken after Tepper on November 4 had declined Allstate's suggestion (by letter dated November 3) that he stipulate to a vacation of the judgment. The November 27 motion invoked section 473, Code of Civil Procedure, although filed more than six months (the statutory limit) after entry of default; it was therefore properly denied. More than three months later (February 3, 1965), defendant moved the court to set aside the order of default and the subsequent judgment upon the equitable grounds hereinbefore stated. In addition to defendant's declaration, the motion was supported by the declarations of four employees of Allstate, the declaration of a partner in the law firm representing defendant that there was a meritorious defense to the action, and a proposed unverified answer which included pleas of contributory negligence and assumption of risk. The motion having been submitted on the above declarations, Tepper's opposing declaration and the files, records and minutes in the subject proceeding, the court denied the relief sought thereby.

■ The applicable legal principles are well settled. The subject motion was addressed to the independent equity power of the court to set aside a judgment assertedly based on extrinsic factors designated as "extrinsic accident and mistake."[1] Thus, in an oft-cited case it is stated that "One who has been prevented by extrinsic factors from presenting his case to the court may bring an independent action in equity to secure relief from the judgment entered against him." (*Olivera* v. *Grace*, 19 Cal.2d 570, 575-576 [122 P.2d 564, 149 A.L.R. 1328].) The same decision holds that the party seeking such relief may forego the filing of an independent action and proceed by motion in the court rendering the judgment. ■ When, as here, such latter course is elected, the motion is

---

[1]Under appropriate circumstances the factors thus designated will justify the intervention of a court of equity. (*Turner* v. *Allen,* 189 Cal. App.2d 753, 758 [11 Cal.Rptr. 630].)

addressed to the sound discretion of the court and in the absence of a clear showing of abuse in the exercise thereof the order of such court will not be disturbed. (*Perkins* v. *Dawson,* 222 Cal.App.2d 610, 615 [35 Cal.Rptr. 276].) All presumptions are in favor of the correctness of the order and the burden is upon the appellant to show that the court abused its discretion. (*Heathman* v. *Vant,* 172 Cal.App.2d 639, 649-650 [343 P.2d 104].)

 Defendant's contentions must be viewed in the light of the above rules and other legal principles formalized over the years for the guidance of trial courts. Emphasized by defendant is the truism that the law favors the adjudication of actions on the merits; but a moving party (such as defendant here) must make a satisfactory showing that he is entitled to such an adjudication. As was said in *Benjamin* v. *Dalmo Mfg. Co.,* 31 Cal.2d 523, 529 [190 P.2d 593], "Courts do not relieve litigants from the effects of mere carelessness." If an adequate explanation is not made for relief from the burdens of a default judgment, the trial court is under a duty to deny motions of the type here in suit. "The court must be made acquainted with the reasons for the [accident and mistake] and, if satisfactory, will act upon them and relieve from burdens caused by them; but, if the [accident and mistake are] wholly inexcusable, as if [they arise] from gross negligence, the court will not look upon [them] kindly, and will have none of [them]." (*Shearman* v. *Jorgensen,* 106 Cal. 483, 485 [39 P. 863].)

At the time of the denial of defendant's motion, however, the case of *Weitz* v. *Yankosky* was pending in the Supreme Court after decision by another division of this court ([Cal. App.] 44 Cal.Rptr. 53). The opinion was filed on January 19, 1966 (63 Cal.2d 849 [48 Cal.Rptr. 620, 409 P.2d 700]) and involves a factual situation similar to that at bar. There, as here, the motion was directed to the inherent equity power of the court, more than six months after the entry of the default, to grant relief from a default judgment assertedly resulting from "extrinsic mistake." There, as here, the defendant carried insurance and relied on his insurer to take all necessary steps on his behalf after service of the summons and complaint (June 4, 1961) which were mailed (on the date of such service) by defendant to the carrier's home office in Texas —defendant, it appears, was not aware that the company had a local claims office in Los Angeles. The papers apparently

were never received by the carrier. On November 17, 1961, a request for the entry of defendant's default was filed, and on May 31, 1962, a default judgment was entered against defendant in the sum of $5,177.75. Defendant made no inquiry of his carrier as to the status of the case because he had previously settled with plaintiff's carrier for the damage to his own car and assumed, as stated in his affidavit, that because of the great lapse of time, ''it was all taken care of.'' This affidavit was in support of a motion by the defendant's carrier on his behalf, filed on August 9, 1963, to set aside the default judgment. Therefrom, and as further set forth in other supporting affidavits, it appears that defendant first heard of the existence of such judgment on December 23, 1962, when he received a notice from the Department of Motor Vehicles that his license was shortly to be revoked for nonpayment thereof. On January 2 or 3, 1963, defendant contacted his insurance agent who, at defendant's request, called the latter's carrier. The agent was told that their files showed no record of the judgment, ''that there must be some sort of clerical error.'' The following month (February), having learned that his carrier had a Los Angeles office, defendant met with an adjuster for that company; the latter stated that he would look into the matter. Later, before the end of April, the adjuster informed defendant that his carrier had never received copies of the summons and complaint. Meantime (early in April) defendant was contacted by plaintiff's attorney and advised of the default judgment against him; the attorney advised defendant to get in touch with his carrier or employ his own counsel. Defendant explained the situation to an attorney he knew, but the latter took no action. In the middle of April the adjuster for defendant's carrier met with plaintiff's lawyer who rejected a request that the default be set aside. On May 1 plaintiff filed a direct action against defendant's carrier on the judgment; after being served on June 7, the carrier filed its answer on June 18, denying the essential allegations of the complaint and setting up the affirmative defense of lack of cooperation. During the first week of July the carrier's adjuster obtained a reservation of rights agreement from defendant to the effect that it was not waiving any defenses against defendant by helping him to set aside the judgment. Although the motion was filed some seven months after defendant knew of the existence of the judgment, under the facts summarized above the trial court granted the relief sought and the Supreme Court

affirmed. In its opinion, the latter court pointed out that it was not until the first week of July, when his carrier sought the reservation of rights, that defendant learned that his liability might not be embraced within the carrier's liability; hence, "the delay between the first week of July and the filing of the motion on August 9 was not unreasonable. [Citation.]" (*Weitz* v. *Yankosky,* 63 Cal.2d 849, 858 [48 Cal.Rptr. 620, 409 P.2d 700].)

The *Weitz* case is first cited (and discussed at length) in defendant's closing brief;[2] hence, there is no mention of that decision in plaintiff's "answering brief." Understandably, therefore, such latter brief has little, if anything, to say about the rule specially applicable where an insured relies upon his insurer to defend or indemnify him with respect to the subject of the action. The rule is thus stated in *Weitz*: ▇ "Where a default is entered because defendant has relied upon a codefendant or other interested party to defend, the question is whether the defendant was reasonably justified under the circumstances in his reliance or whether his neglect to attend to the matter was inexcusable. [Citations.] This rule has been held applicable where an insured relied upon his insurer to defend. [Citation.]" (Pp. 855-856.) ▇ In other reported cases, the court thereafter noted, reliance upon ministerial acts by other persons in order to assert a defense was held to be excusable extrinsic mistake. According to the declarations in support of the subject motion the following facts emerge: On November 22, 1962, the day after he was served, defendant took copies of the summons and complaint to Allstate's office and left them with "some person in that office." He heard nothing further about the matter until September or October of 1964 when plaintiff's attorney telephoned him. The next day he went to his insurer's office and advised a girl (there employed) of the telephone call; after a check had been made, she told him that the file was in storage. The file was consigned to storage because, according to declarations of Allstate employees, they had no record of the filing of the lawsuit and no record that defendant had left the papers with any person authorized to receive the same. On October 30, 1964, defendant received a letter from plaintiff's attorney to the effect that he had obtained a default judgment in the amount stated. There then followed a request by defendant's attorney that the judgment be set aside by stipulation, the denial of such request, the

---

[2]Defendant's opening brief was filed on January 21, 1966, two days after *Weitz* was decided.

filing of the motion under section 473, its denial, and finally the filing of the present motion which, says defendant in his brief, was done "only 37 court days" thereafter.

There can be but little doubt that the ministerial acts of defendant's carrier belong in the same category as those discussed in *Weitz*; defendant accordingly had the right to, and did, assume that the company would defend or otherwise protect his interests. ■ The question remains whether defendant has brought himself within the remaining determinations upon which the *Weitz* case is rested. It was there concluded (1) that a delay of one month (after discovery of possible liability in the premises) in moving to set aside the judgment did not constitute a lack of diligence in the nature of laches because plaintiff was unable to show any prejudice resulting from the granting of the motion, and (2) under all the circumstances defendant Yankosky did not act unreasonably in failing to file the motion sooner. ■ With respect to (1) *supra,* in our case no counteraffidavit was filed by plaintiff that he had suffered any prejudice or that any injustice would be done by the granting of the motion. As pointed out in *Weitz*, when such counteraffidavit is not filed in opposition to a motion under section 473, very slight evidence will be required to justify the granting of the motion; however, as there further noted, the power to grant relief under section 473 is wider than it is in a proceeding of this kind and, as still further noted, lack of prejudice is only one of the factors to be considered in determining whether the moving party acted diligently. What is said with respect to (1) must be read, it seems to us, with the court's treatment of (2) respecting the timeliness of the motion in the light of the conceded circumstances at bar. According to the Supreme Court, the same considerations apply in determining the timeliness of such motion as are applicable in deciding whether the moving party's conduct was excusable in relying upon the other interested party, in our case, Allstate, to assert a defense to the action. In this connection it is significant that *Benjamin* v. *Dalmo Mfg. Co.,* *supra* (31 Cal.2d 523) was distinguished: "There the delay in seeking relief from the default was apparently attributable to the defendant's private attorney, and with regard to motions to set aside default judgments, cases involving reliance upon attorneys have been treated differently from those involving reliance upon other third parties. [Citation.]" (Pp. 858-859.)

An overall appraisal of the merits of this appeal requires that this case likewise be treated differently. Although *Weitz*

342

was an affirmance of an order granting the motion for relief, there is so little difference in the two cases factually that a reversal here seems warranted. In fairness to the trial court, apparently the special rule articulated in *Weitz* was not brought to its attention; as a result, the decision below was predicated upon general legal concepts instead of the narrower principles applicable to the facts at bar. We have not overlooked plaintiff's argument that when an order granting relief could have been sustained on the record, it does not follow that an order denying it must be reversed absent an abuse of discretion (*Ross* v. *Ross,* 48 Cal.App.2d 72, 76 [119 P.2d 444]); but *Ross* was cited in *Benjamin* v. *Dalmo Mfg. Co., supra,* for the same proposition, and the latter case (according to *Weitz*) does not control a situation akin to that before us. As stated in a landmark case involving exercise of a court's discretion: "The discretion intended . . . is not a capricious or arbitrary discretion, but an impartial discretion, guided and controlled in its exercise by fixed legal principles." (*Bailey* v. *Taaffe,* 29 Cal. 422, 424.) In our opinion, the discretion exercised by the court in this case was not controlled by the legal principles peculiarly applicable, and its order must be reversed.

The above determination remains unaffected by plaintiff's claim, since we deem it without merit, that defendant's proposed answer does not indicate a substantial probability of success at a trial on the merits. While *Smith* v. *Busniewski,* 115 Cal.App.2d 124 [251 P.2d 697] (relied on by plaintiff) makes mention of the rule that the moving party must plead and prove that a different result will be had in any such trial, the statements in defendant's declaration coupled with the proposed pleading which contains denials and affirmative defenses tend to constitute a sufficient defense to the complaint on file—the law, it would seem, does not require defendant to guarantee success in the adversary proceeding he seeks. In support of the contention that defendant under the facts of the case cannot prevail in any such proceeding, it is argued that he violated the law, and was therefore prima facie negligent, in driving on the wrong side of the alley. However, in *Alarid* v. *Vanier,* 50 Cal.2d 617, 624 [327 P.2d 897], the court has furnished the correct test to be applied in such an eventuality: Did the person who has violated a statute sustain the burden of showing that he did what might reasonably be expected of a person of ordinary prudence, acting under similar circumstances, who desired to comply with the law? Mani-

festly this question must be answered by the trier of fact; furthermore, it is debatable whether under all the circumstances any section of the Vehicle Code was violated by defendant.

The order is reversed.

Wood, P. J., and Fourt, J., concurred.