Filed 12/11/20  Buckley v. Katina CA2/7
Opinion following rehearing

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| TRISTRAM BUCKLEY,<br><br>        Plaintiff and Appellant,<br><br>        v.<br><br>LENA KATINA,<br><br>        Defendant and Respondent. | B278362<br><br>(Los Angeles County<br>Super. Ct. No. BC510762) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Holly E. Kendig, Judge.  Affirmed.

Tristram Buckley & Associates and Tristram T. Buckley for Plaintiff and Appellant.

Revolve Law Group, Kimberly A. Wright, Kuznetsky Law Group, and Michael D. Kuznetsky for Defendant and Respondent.

————————————

Tristram Buckley, an attorney representing himself, filed a lawsuit against Lena Katina. After Buckley filed a proof of service of the summons and complaint on Katina, Buckley took Katina's default and obtained an $8 million default judgment against Katina. When Katina learned of the default judgment, she moved to set aside the default and default judgment, arguing that her failure to defend the action resulted from "extrinsic mistake."

The trial court granted Katina's motion, exercising the court's equitable power to set aside the default and default judgment. Buckley argues that the trial court abused its discretion because the trial court misapplied the law, ignored the evidence, and disregarded prior court orders. We affirm.

## PROCEDURAL AND FACTUAL BACKGROUND

### A. *Buckley's Complaint and Default Judgment*

Buckley is a music manager. Katina is a recording artist, who formerly performed in a Russian duo called t.A.T.u. During the period March 2012 through March 2013, Buckley managed Katina. Buckley claims that in March 2013 Katina wrongfully terminated him as her manager. In March 2013 Katina retained counsel, Mark L. Levinson, to represent her in the dispute with Buckley and to attempt to negotiate a resolution. Subsequently, Levinson and Buckley had numerous telephone conversations and email communications to discuss possible resolution.

On June 4, 2013 Buckley filed a complaint against Katina and seven other defendants. Buckley alleged that, as Katina's manager, he "dramatically improved every aspect of the Katina project." Buckley alleged that, after "a year of his working full time on the Katina project," he "achieved what everyone said would be impossible, a reunion of [t.A.T.u]." "Before being

2

wrongfully terminated," Buckley alleged that he "effectively altered [Katina's] career and put her on a track that would result in the highest possible likelihood for commercial success for the remainder of her career." According to Buckley, Katina was "the most famous recording artist in Russian music history."

The complaint further alleged that Katina terminated Buckley's services "to avoid having to pay him his 20% of revenue already earned while he was the Manager" and 20% of Katina's future revenue. Buckley alleged that Katina and other defendants "made false and derogatory statements" about him "reaching hundreds of thousands of people." Based on these allegations, Buckley asserted causes of action against Katina for fraud and fraudulent inducement, breach of contract, quantum meruit, unjust enrichment, Labor Code violations, and defamation.

Buckley maintains that on June 30, 2013 Kate Harbuzava, a designer, personally served Katina with the summons and complaint. Harbuzava signed a proof of service stating that she personally served Katina with the summons and complaint at an address in Los Angeles. According to Buckley, "[a]fter the lawsuit was filed, Katina left her apartment in Los Angeles [and] moved back to Russia to focus on starting a family . . . ." After Katina failed to respond to the complaint, on October 22, 2013 Buckley filed a request for entry of default. The request for entry of default, dated September 28, 2013 and signed by Buckley, indicated in the "Declaration of mailing" section that the request was not mailed to Katina because her address was "unknown." Although largely crossed-out and without listing a mailing address for Katina, the request also indicates September 28, 2013 as the date of mailing. On October 28, 2013 the court clerk

3

rejected the request because of the defective declaration of mailing. On December 18, 2013 Buckley filed a second request for entry of default, also dated September 28, 2013 and signed by Buckley. The request stated that on September 28, 2013 it was mailed to Katina at an address in Woodside, California. The trial court entered Katina's default on December 18, 2013. Following a default prove-up hearing, the trial court[1] entered a default judgment on October 7, 2015 in favor of Buckley and against Katina in the amount of $8,175,788.01. Buckley did not notify Levinson that Buckley was taking Katina's default or that he was seeking a default judgment.

B.      *Katina's Motion To Set Aside the Default and Default Judgment*

On February 3, 2016 Michael Kuznetsky, counsel for a co-defendant in the action, after discovering the judgment against Katina, advised Katina of the default judgment. The next day Katina retained Kuznetsky to set aside the default judgment.

1.      *The Moving Papers*

On May 13, 2016 Katina filed a motion to set aside the default and default judgment. Katina argued that the trial court should exercise its equitable powers to set aside the default and default judgment because they were entered as a result of "extrinsic mistake." Under the extrinsic mistake doctrine, Katina argued relief should be granted because she had a "meritorious defense," a "satisfactory excuse for not presenting a defense," and acted diligently to set aside the default and default judgment.

---

[1]      Judge Michelle R. Rosenblatt, now retired.

4

In support of her meritorious defense argument, Katina's motion included a special motion to strike the complaint's defamation cause of action pursuant to Code of Civil Procedure section 425.16. In his declaration Kuznetsky stated that he "believe[d] that [Katina] has excellent substantive defenses to the allegations in the unverified [c]omplaint," and he intended to file on Katina's behalf a demurrer and motion to strike following the resolution of the anti-SLAPP motion. Kuznetsky also stated that Katina had filed a "petition to determine controversy" against Buckley with the California Labor Commissioner under the Talent Agencies Act. Katina's petition alleged that Buckley "unlawfully acted in the capacity of [Katina's] talent agency."

With respect to a satisfactory excuse for not presenting a defense in her declaration Katina stated, on the day of the complaint's service,[2] she was at the home of Harbuzava, her costume designer, "to be fitted for an outfit." After the fitting, Harbuzava handed Katina an envelope Harbuzava said was from Buckley. "Without reviewing the documents inside," Katina handed the envelope back to Harbuzava and told Harbuzava that "any documents from Mr. Buckley should be sent to my lawyer, [Levinson]." Katina stated that Harbuzava responded, "'Ok, as you wish,'" and "took back the envelope." Katina understood Harbuzava "to mean that [Harbuzava] would instruct [Buckley] to send these documents directly to [Levinson]." Katina stated that she never received a request for entry of default from

---

[2] In her declaration Katina identified the date as October 22, 2013, which was the date Buckley filed the proof of service with the court. The proof of service stated that service took place on June 30, 2013.

5

Buckley, and she learned of the default judgment when Kuznetsky advised her in February 2016.

In his declaration Levinson stated that, "despite having numerous conversations with me after the date of alleged service of [Katina]," Buckley "never advised [Levinson] that [Buckley] filed the Complaint or allegedly served [Katina]." Levinson did not learn a default judgment had been entered against Katina until March 2016. Levinson stated that, had he known Katina "was allegedly in default" or that "a default would be requested against [Katina]," "he would have immediately found a litigator to defend her rights."

Katina argued that she acted diligently after learning of the default and default judgment. In his declaration Kuznetsky stated that he sent a letter to Buckley on February 11, 2016 asking Buckley to stipulate to set aside the judgment and to forward copies of all filed pleadings concerning Katina. After Buckley failed to respond, Kuznetsky reserved an April 13, 2016 hearing date for a motion to set aside.

Buckley advised Kuznetsky on March 16, 2016 that he would oppose any effort to set aside the default judgment. Buckley did not forward the court documents to Kuznetsky, telling him to obtain them from the court. Buckley stated, "I believe the judgment . . . something like $7 million, is available online." After Kuznetsky advised Buckley that the trial court had misplaced the entry of default, on March 23, 2016 Buckley transmitted a copy of the default judgment but not the entry of default. Kuznetsky again requested the entry of default from Buckley. Because of the delay in gathering the necessary documents, Kuznetsky continued the hearing date to June 13, 2016.

### 2. *Buckley's Opposition*

In his opposition Buckley argued that Katina failed to demonstrate the existence of exceptional circumstances, required when relief from default judgment is sought beyond Code of Civil Procedure section 473's 180-day deadline, because Katina was "personally served." In his declaration Buckley stated, "After the lawsuit was filed and after Katina's attorney stated he would not accept service on behalf of Katina, I asked Harbuzava to inform me the next time she was going to meet with Katina." In Harbuzava's declaration, although she does not state the date when Katina was in Harbuzava's home for the fitting, Harbuzava stated that, as "Katina was leaving" Harbuzava's home, "[Harbuzava] handed her the envelope" containing the summons and complaint. According to Harbuzava, she told Katina, "'this is from [Buckley], he asked me to give these to you.'" Harbuzava told Katina, "'it's the lawsuit court papers.'" Harbuzava stated that Katina then "took the envelope . . . opened the envelope and looked at the court papers that were inside the envelope." According to Harbuzava, Katina said, "'I don't want it. Give it back to [Buckley]' and she refused to take the papers and then she left."[3]

---

[3] Although Buckley attached documents to his declaration purporting to show Katina's knowledge of the complaint, he did not mention them in his declaration or otherwise authenticate the documents. The trial court sustained Katina's evidentiary objections to these documents and other documents Buckley submitted in opposition to the motion to set aside. Buckley does not adequately contest those rulings. Therefore, Buckley has forfeited any argument based on these matters. (See *People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 363 ["[i]f a party's briefs do not provide legal argument and citation to

In his declaration Buckley stated, "There were no 'active settlement negotiations' or any other communications between Buckley and Levinson at this time when Katina was served." Buckley stated that setting aside the default judgment against Katina would cause him to suffer "extreme prejudice" because he "prosecuted the default with an extensive investment of time and energy and resources." Buckley also stated that "in order to streamline the case," he had dismissed without prejudice five other defendants and three causes of action. In his declaration Buckley did not state that he advised Levinson that he intended to take Katina's default or to obtain a default judgment against her. Buckley also did not deny that he knew that Levinson represented Katina. Although Buckley argued that Katina and Kuznetsky "engaged in unethical conduct and committed perjury," Buckley did not argue that the doctrine of unclean hands barred Katina's claim for relief.

### 3. *Buckley's Supplemental Opposition*

With the hearing on Katina's motion scheduled for June 13, 2016, on June 6, 2016 Katina filed her reply papers. On June 8, 2016 Buckley made an ex parte application to continue Katina's motion to set aside and another motion and to obtain leave to file

---

authority on each point raised, "'the court may treat it as waived, and pass it without consideration'"]; *In re Marriage of Davila & Mejia* (2018) 29 Cal.App.5th 220, 227 ["'[i]ssues not supported by citation to legal authority are subject to forfeiture'"]; *Multani v. Witkin & Neal* (2013) 215 Cal.App.4th 1428, 1457 ["'Mere suggestions of error without supporting argument or authority other than general abstract principles do not properly present grounds for appellate review.' [Citation.] 'Hence, conclusory claims of error will fail'"].)

an amended complaint. Buckley's application asserted that "[l]eave is required so Plaintiff may properly, adequately and fully plead all his claims and defenses against the defendants." The trial court's[4] minute order from June 8 stated, "The ex parte application is denied without prejudice as plaintiff has filed a First Amended Complaint." The minute order also stated that Katina's motion to set aside and the other motion were continued to June 22, 2016. Katina's counsel gave notice of the ruling.[5]

On June 20, 2016 Buckley filed a 19 page "supplemental brief" in opposition to the motion to set aside. Buckley also filed his declaration and a nine page Harbuzava declaration with 22 exhibits. On June 20, 2016, Buckley also filed objections to Katina's notice of ruling and a request for order to show cause regarding contempt based on Katina's "continuous and ongoing falsification of facts and misstatements of the law . . . ." On June 22, 2016 Buckley filed a response to Katina's evidentiary objections, which were filed with her reply papers. Katina objected to Buckley's supplemental papers as unauthorized. Buckley also filed an opposition to Katina's untimely objection on August 17, 2016.

---

[4] Judge Josh M. Fredricks (Retired Judge of the L.A. Sup. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)

[5] After Judge Rosenblatt retired and the trial court reassigned the case to Judge David Soleto, on June 20, 2016 Buckley filed a peremptory challenge against Judge Soleto. Because of Buckley's challenge, Judge Soleto vacated the June 22, 2016 hearing, and the trial court reassigned the case to Judge Holly E. Kendig. Judge Kendig scheduled the hearing for September 9, 2016.

C.    *The Trial Court's Ruling*

The trial court heard Buckley's motion to set aside the default and default judgment on September 9, 2016. After sustaining most of Katina's objections to Buckley's evidence and declining to consider Buckley's supplemental opposition, the trial court granted the motion to set aside default and default judgment based on "the equitable doctrine of extrinsic mistake." In its order issued on September 9, 2016 the trial court ruled that Katina had satisfied the "meritorious defense" requirement because "Katina has shown facts indicating a sufficiently meritorious claim to entitle her to a fair adversary hearing." The trial court noted that Katina would be filing "not just an answer admitting or denying the allegations in the complaint, but also an anti-SLAPP motion, a demurrer, and a motion to strike portions of the complaint."

Regarding a satisfactory excuse for not presenting a defense, the trial court stated that the "term extrinsic mistake is broadly applied when circumstances extrinsic to the litigation have unfairly cost a party a hearing on the merits." Relying on *Benjamin v. Dalmo Mfg. Co.* (1948) 31 Cal.2d 523,[6] the trial court

---

[6]    The trial court stated, "The California Supreme Court found sufficient evidence of extrinsic mistake in the case of *Benjamin v. Dalmo Mfg. Co.* (1948) 31 Cal.2d 523. In that case, the president of a corporate defendant instructed his secretary to forward a summons and complaint to the corporation's attorney. . . . Misinterpreting the president's instructions, the secretary filed the summons and complaint away and did not forward these documents to the attorney. . . . Thereafter, a default judgment was entered against the corporation when it failed to respond to the action. . . . The Court concluded that this scenario, and

10

found that "Katina was not fully aware of the legal importance of the encounter" with Harbuzava. The trial court relied on Katina's declaration: "Katina declares that the purported service made upon her was carried out by one Ms. Harbuzava, who was Katina's wardrobe designer. . . . According to Katina, at the end of a fitting on October 22, 2013, Harbuzava handed her a large envelope that was purportedly from [Buckley]. . . . Given that Katina had been in earlier settlement negotiations with [Buckley], Katina requested that Harbuzava have the documents sent to her then-attorney, Mark L. Levinson. . . . At no point did Katina read the documents nor was she informed of the contents of the documents. . . . When Harbuzava stated, 'OK, as you wish,' Katina understood that the documents would be sent to her attorney. . . . If Katina's account is given credit, this situation would be similar to that in *Benjamin* [*v. Dalmo Mfg. Co.*] considering that Harbuzava, rather than being a registered process server, was performing work for Katina at the time. Harbuzava apparently indicated her acquiescence to Katina's request that the documents be forwarded to Levinson, but thereafter undertook no further action." The trial court ruled that Katina presented "a reasonable excuse for why no defense was presented."

The trial court found that "another independent excuse exist[ed]" for Katina not presenting a defense. The trial court ruled that, because Buckley "had engaged in settlement negotiations" with Levinson, and "knew that Levinson represented Katina," it was "blatantly unethical" for Buckley, an attorney, not to advise Levinson "that (1) a lawsuit had been

others like it, provided a sufficient explanation for failure to make a reasonable appearance in defense of an action."

11

filed, (2) that Katina's default was being sought, and (3) that a default judgment was being requested." The trial court held that Buckley as an attorney is "held to a higher standard and bound by the same code of ethics as is every other lawyer in this state." Relying on the California Attorney Guidelines of Civility and Professionalism, the trial court concluded, "Therefore, as a result of Plaintiff's dereliction of his ethical responsibility as a licensed attorney in this state, neither Katina nor her legal representative were made aware of the default or the default judgment until well after the fact. This egregious conduct is more than sufficient to constitute a basis for setting aside the default and default judgment based on extrinsic mistake."

Finally, in finding the requirement of diligence satisfied, the trial court pointed out that "immediately after discovering the existence of the default judgment, Katina hired counsel and that her counsel contacted Plaintiff and sought a stipulation to set the default aside. While this request was rebuffed, this refusal to stipulate was evidently not communicated until roughly one month later. From that point, less than two months elapsed before the present motion was filed." The trial court therefore ruled that "Katina acted with reasonable diligence in moving to have the default and default judgment set aside." The trial court found that Buckley "suffered no prejudice as a result of [Katina's] speed in seeking to set aside the default and default judgment."

Buckley timely appealed. After argument, on September 2, 2020 this court issued a nonpublished opinion. (Sept. 2, 2020, B278362 [nonpub. opn.].) On September 25, 2020, this court granted Buckley's petition for rehearing to accommodate Buckley's request for additional oral argument.

## DISCUSSION

### A.    *The Trial Court Did Not Abuse Its Discretion in Setting Aside the Default and Default Judgment*

#### 1.    *Applicable Law and Standards of Review*

A trial court has inherent power to vacate a default judgment on equitable grounds.  (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 981 (*Rappleyea*); *Aldrich v. San Fernando Valley Lumber Co.* (1985) 170 Cal.App.3d 725, 737 (*Aldrich*).)  "One ground for equitable relief is extrinsic mistake–a term broadly applied when circumstances extrinsic to the litigation have unfairly cost a party a hearing on the merits."  (*Rappleyea*, at p. 981; *Aldrich*, at p. 738.)  "[E]xtrinsic mistake exists when the ground of relief is not so much the fraud or other misconduct of one of the parties as it is the excusable neglect of the defaulting party to appear and present his claim or defense.  If that neglect results in an unjust judgment, without a fair adversary hearing, the basis for equitable relief on the ground of extrinsic mistake is present."  (*Manson, Iver & York v. Black* (2009) 176 Cal.App.4th 36, 47; accord, *In re Marriage of Park* (1980) 27 Cal.3d 337, 342.)

"To qualify for equitable relief based on extrinsic mistake, the defendant must demonstrate:  (1) 'a meritorious case'; (2) 'a satisfactory excuse for not presenting a defense to the original action'; and (3) 'diligence in seeking to set aside the default once the fraud [or mistake] had been discovered.'"  (*Mechling v. Asbestos Defendants* (2018) 29 Cal.App.5th 1241, 1246 (*Mechling*); accord, *Rappleyea, supra,* 8 Cal.4th at p. 982; *In re Marriage of Stevenot* (1984) 154 Cal.App.3d 1051, 1071.)

When "a default *judgment* has been obtained, equitable relief may be given only in exceptional circumstances."  (*Rappleyea, supra*, 8 Cal.4th at p. 981.)  We review the order

granting Katina's motion to set aside the default and default judgment for abuse of discretion. (*Ibid*.) The law "favor[s] a hearing on the merits whenever possible, and . . . appellate courts are much more disposed to affirm an order which compels a trial on the merits than to allow a default judgment to stand." (*Aldrich, supra,* 170 Cal.App.3d at p. 737.)

"With respect to purely factual findings, we will defer to the trial court's assessment of the parties' credibility, even though the determination was made on declarations rather than live testimony." (*In re Marriage of Nurie* (2009) 176 Cal.App.4th 478, 492.) "When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court. . . . [¶] Even though contrary findings *could* have been made, an appellate court should defer to the factual determinations made by the trial court when the evidence is in conflict. This is true whether the trial court's ruling is based on oral testimony or declarations." (*Shamblin v. Brattain* (1988) 44 Cal.3d 474, 478-479.)

2. *Extrinsic Mistake*

a. *Meritorious case*

Buckley argues Katina made an insufficient showing of a meritorious case. He argues that the trial court improperly relied solely on Kuznetsky's declaration that Katina "'ha[d] excellent substantive defenses'" to the complaint. However, to establish a meritorious case, "only a minimal showing is necessary." (*Mechling, supra,* 29 Cal.App.5th at p. 1246.) The court in *Mechling* declined to impose a requirement that the moving party submit a "proposed pleading or a declaration averring there [was] such a defense." (*Mechling*, at p. 1247.) The court held, "Fireman's Fund has asserted a meritorious defense by

14

contending a different result may be reached if it defends the action. Moreover, the trial court was entitled to draw an inference from the fact that Fireman's Fund retained counsel, that counsel will take the next step, if allowed, of filing a responsive pleading and conducting discovery to challenge plaintiffs' proof of damages and causation." (*Ibid*.)

Here, Buckley alleged that during the year he managed Katina, he revived her career. Based on an alleged agreement set forth in an email exchange, Buckley seeks 20 percent of Katina's earnings for the year he managed Katina as well as 20 percent of her future earnings. He obtained an $8 million default judgment, with an unchallenged showing of damages and causation. After the default prove-up hearing, the trial court's order stated, "[Buckley] is to calculate total damages as enumerated by the Court and submit [a] Judgment."

As in *Mechling*, "[a] reasonable inference from these facts [was Buckley's] damages award would have been impacted had [Katina] presented a defense and challenged [Buckley's] proof of causation and damages." (29 Cal.App.5th at p. 1247.) Further, in addition to her counsel's declaration, Katina presented the trial court with a proposed special motion to strike Buckley's defamation cause of action as well as a declaration from her counsel that he intended to file a demurrer and a motion to strike certain allegations.[7] (See *Rappleyea, supra,* 8 Cal.4th at p. 983

---

**7** On August 24, 2016 the trial court granted a co-defendant's anti-SLAPP motion, dismissing Buckley's defamation cause of action. In granting the motion the trial court ruled, "there is little question that the conduct giving rise to the defamation claim falls under the anti-SLAPP statute." The trial court further found, "Buckley has failed to provide any admissible

[moving party sufficiently showed merit through unverified answer to an unverified complaint and counsel's under oath statement, "'these Defendants have a very good (and certainly a justiciable) defense to the Plaintiff's claim'"]; see *In re Marriage of Park, supra,* 27 Cal.3d at p. 346 ["facts suggest that if [moving party was] properly represented at a new hearing, the judgment might well differ materially" from the judgment entered].)

The trial court's ruling was within its discretion.

### b.       *Satisfactory excuse*

Buckley argues that Katina did not provide an adequate excuse for doing "nothing whatsoever regarding the lawsuit she had actual knowledge of and where she was personally handed the pleadings." However, the trial court sustained Katina's objections to Buckley's evidence concerning Katina's purported knowledge of the complaint. As stated, Buckley forfeited any argument based on these matters. (See *People v. Bryant, Smith and Wheeler, supra,* 60 Cal.4th at p. 363; *In re Marriage of Davila & Mejia, supra,* 29 Cal.App.5th at p. 227.)[8]

---

evidence that would tend to show that his claim for defamation even has minimal merit."

[8]       Buckley's argument that the trial court "had fundamental misunderstandings of determinative facts and issues of law" based on its incorrect reference to October 22, 2013 as the date of service is misguided. The trial court discussed the incorrect October 22, 2013 date of service in connection with Buckley's "unauthenticated" "purported evidence" that "Katina was necessarily aware of the pending litigation," including an "unauthenticated Facebook printout." As stated, the trial court sustained Katina's evidentiary objections to the Facebook printout (exhibit 5) as well as the other related items (exhibits 2-4) attached to Buckley's opposition declaration. As also stated,

In finding that Katina had provided a satisfactory excuse, the trial court found that "Katina was not fully aware of the legal importance of the encounter" on June 30, 2013. In making this finding, the trial court relied on the context of the encounter between Harbuzava and Katina. Harbuzava, a designer who made outfits for Katina, handed the envelope to Katina in Harbuzava's home at the end of a fitting. The trial court accepted Katina's account that she did not open the envelope and that she handed the envelope back to Harbuzava with instructions to give the documents to her lawyer, Levinson. Katina understood that the documents would be sent to Levinson. We are required to accept the trial court's findings. (See *Shamblin v. Brattain, supra,* 44 Cal.3d at p. 479 ["[t]he trial court, with declarations and supporting affidavits, was able to assess credibility and resolve any conflicts in the evidence"]; *Cowan v. Krayzman* (2011) 196 Cal.App.4th 907, 915 ["The trial court—who, unlike us, was also able to assess [counsel's] credibility in person—could reasonably find his declaration not credible. We have no basis to disturb this finding on appeal"].)

While Katina's decision not to accept the documents from Harbuzava and forward them herself to Levinson can be debated, Buckley's status as a lawyer is relevant to the analysis. Thus, in

Buckley forfeited any argument based on the Facebook printout and the other excluded exhibits regarding Katina's alleged knowledge of the complaint because he fails to adequately contest the trial court's ruling. The actual date of service, June 30, 2013, was closer in time to the parties' "earlier settlement negotiations" referenced in the trial court's discussion. Under these circumstances, if the trial court had mentioned June 30, rather than October 22, it would have further supported the trial court's finding that Katina's version was credible.

17

finding a reasonable excuse, the trial court also relied on Buckley's failure to give notice to Levinson, Katina's "known" counsel, that Buckley was taking Katina's default and seeking a default judgment against Katina. Buckley argues that he was not engaged in active settlement negotiations with Levinson. However, as the trial court pointed out, whether or not settlement discussions were ongoing, Buckley knew that Levinson represented Katina in their dispute. At a minimum, Buckley, as an attorney, had an ethical obligation to notify Levinson. (See *Fasuyi v. Permatex, Inc.* (2008) 167 Cal.App.4th 681, 701 ["[w]e agree, as such warning is at the least an *ethical* obligation of counsel"]. Had Buckley notified Levinson, according to Levinson, he would have found litigation counsel for Katina, and Buckley would not have obtained a default judgment. The parties likely would have proceeded to active litigation on the merits.

Under the circumstances, the trial court did not abuse its discretion in finding that Katina had a satisfactory excuse for failing to respond to the complaint.

### c.     *Diligence*

"To qualify for equitable relief on the ground of extrinsic fraud or mistake, the moving party must demonstrate diligence in seeking to set aside the default once it was discovered." (*Manson, Iver & York v. Black, supra,* 176 Cal.App.4th at p. 49; accord, *Rappleyea, supra*, 8 Cal.4th at p. 982; *Weitz v. Yankosky* (1966) 63 Cal.2d 849, 857.) The trial court did not abuse its discretion in finding that Katina acted diligently after she discovered the default and default judgment. Katina retained counsel the next day. Her counsel, Kuznetsky, then immediately contacted Buckley to obtain the relevant documents. After

18

delaying for over a month in responding, in March 2016 Buckley told Kuznetsky that the documents are "available online." Kuznetsky sought the documents from the court; however, the court could not locate the entry of default. After her counsel obtained the necessary documents, in May 2016 Katina's counsel filed the motion to set aside the default and default judgment.

Buckley argues that setting aside the default judgment "will cause him extreme prejudice due to loss of evidence, loss of witnesses and faded memories." Buckley further argues he "dismissed parties and causes of action so that the Trial Court would move forward with the severance." However, Buckley does not identify any lost evidence or witnesses with faded memories. Nor does he explain what claims he dismissed or how their dismissal was connected to Katina's not responding to the complaint. (See *Aldrich, supra,* 170 Cal.App.3d at p. 740 ["[a]lthough it might be said that there is some prejudice inherent in any protracted delay, appellants' single declaration in opposition to respondent's motion did not set forth substantial evidence of missing witnesses, evidence destroyed, and the like, to establish prejudice"].)

Under the circumstances, the trial court acted within its discretion in concluding that Buckley was not prejudiced.

In sum, the trial court did not abuse its discretion in granting Katina's motion for equitable relief and setting aside the default and default judgment. (*Mechling, supra,* 29 Cal.App.5th at p. 1249 ["That a different decision could have been reached is not sufficient because we cannot substitute our discretion for that of the trial court. The trial court's ruling must be beyond the bounds of reason for us to reverse it"]; see generally *Sargon Enterprises, Inc. v. University of Southern California* (2012) 55

19

Cal.4th 747, 773 ["'The scope of discretion always resides in the particular law being applied, i.e., in the "legal principles governing the subject of [the] action . . . ." Action that transgresses the confines of the applicable principles of law is outside the scope of discretion and we call such action an "abuse" of discretion. [Citation.] . . . [¶] The legal principles that govern the subject of discretionary action vary greatly with context. [Citation.] They are derived from the common law or statutes under which discretion is conferred'"]; *In re Marriage of Rosevear* (1998) 65 Cal.App.4th 673, 682 ["Generally, where a trial court has discretionary power to decide an issue, an appellate court is not authorized to substitute its judgment of the proper decision for that of the trial judge. The trial court's exercise of discretion will not be disturbed on appeal in the absence of a clear showing of abuse, resulting in injury sufficiently grave as to amount to a manifest miscarriage of justice. [Citations.] . . . The burden is on the complaining party to establish abuse of discretion"].)

### 3. *Unclean Hands*

Buckley argues that Katina "is not entitled to equitable relief given her unclean hands." However, because Buckley failed to raise the doctrine of unclean hands in the trial court, Buckley forfeited the argument. (*Federal Deposit Ins. Corp. v. Dintino* (2008) 167 Cal.App.4th 333, 355 [failure to raise unclean hands argument in the trial court forfeits the issue on appeal]; see *Sea Sage Audubon Society, Inc. v. Planning Com.* (1983) 34 Cal.3d 412, 417 [issues not raised in trial court cannot be raised for first time on appeal]; *Nellie Gail Ranch Owners Assn. v. McMullin* (2016) 4 Cal.App.5th 982, 997 [same].)

Even if Buckley had not forfeited the unclean hands argument, the evidence does not support applying it here.

20

Buckley contends that Katina and Kuznetsky "falsely represented the key facts and circumstances underpinning [Katina's] motion." However, as stated, "[e]ven though contrary findings *could* have been made," we defer to the trial court's factual determinations "when the evidence is in conflict." (*Shamblin v. Brattain, supra,* 44 Cal.3d at pp. 478-479.) Buckley has not shown any false representations.

Buckley further argues that Katina "falsely represented to Judge Kendig that Judge Fredricks had not granted [Buckley] leave to file the supplemental pleadings and declarations." As stated, on June 8, 2016, after the parties had fully briefed Katina's motion to set aside, Judge Fredricks granted Buckley's ex parte application to continue the hearing on Katina's motion from June 13, 2016 to June 22, 2016. However, the trial court did not grant Buckley leave to file supplemental opposition.[9] Consistent with the minute order, the handwritten order that Buckley drafted and Judge Fredricks signed at the hearing on the ex parte application did not give Buckley leave to file supplemental papers. On December 1, 2016, when Judge Fredricks granted Buckley's ex parte application, Judge Fredricks did not have jurisdiction to issue the order stating that

---

[9]     Buckley's ex parte application did not request leave to file a supplemental opposition to Katina's motion. Rather, Buckley's ex parte application sought "an Order granting leave to file [Buckley's] First Amended Complaint, or alternatively for an Order Shortening time to hear [Buckley's] Motion for Leave to file his First Amended Complaint, and to continue the June 10 and June 13 hearing dates . . . ." Moreover, Buckley's May 31, 2016 opposition to Katina's motion to set aside did not mention any difficulty in responding to the motion.

21

the "June 8, 2016 *ex parte* application seeking leave to file supplemental briefs was granted at that time" because on October 31, 2016 Buckley had filed his notice of appeal from Judge Kendig's September 9, 2016 order granting Katina's motion. (See Code Civ. Proc., § 916, subd. (a).) Further, as Katina points out, Buckley failed to seek reconsideration of Judge Kendig's September 9, 2016 order granting Katina's motion to set aside. (See Code Civ. Pro., § 1008, subd. (e) ["[n]o application to reconsider any order . . . may be considered by any judge or court unless made according to this section"]; *Kinda v. Carpenter* (2016) 247 Cal.App.4th 1268, 1278 ["section 1008 places strict jurisdictional limits on a litigant's ability to seek reconsideration of a prior ruling"].)[10] Buckley has failed to show any

---

[10] When Buckley presented Judge Fredricks's December 1, 2016 order to Judge Kendig on January 6, 2017, Judge Kendig ruled: "[Buckley,] who filed no opposition to the pending Motion for Anti-SLAPP Attorneys' Fees, files and brings to the court on this date a purported order and minute order in re: ex parte application of 06/08/16, which, despite the description on its face of 'Dept 42,' [Judge Fredricks's order] is not an order of this court. [¶] Instead, it is an order by [Judge Fredricks] sitting by assignment in a criminal court in Long Beach issued on December 1, 2016, to whom [Buckley] went seeking an ex parte ruling in this case on 12/01/16, and who, as of this date and the date of the purported 12/01/16 order, has no jurisdiction over this case and no ex parte jurisdiction. ([Judge Fredricks] sat by assignment in Department 40 for a short time in June 2016, when this case was pending in Dept. 40, before the case was transferred to Dept. 42 on 06/22/16. It was transferred to Dept. 42 as a result of [Buckley's] Peremptory Challenge, after which matters in Dept. 40 were taken off calendar . . . .) The court has not considered [Judge Fredricks's] order."

22

misrepresentation concerning the results of the June 8, 2016 ex parte hearing.[11]

Buckley failed to establish that the doctrine of unclean hands barred Katina from obtaining relief.

## DISPOSITION

The trial court's September 9, 2016 order is affirmed. Katina shall recover her costs on appeal.

DILLON, J.[*]

We concur:

PERLUSS, P. J.          FEUER, J.

---

[11] The trial court did not abuse its discretion in sustaining Katina's objection to Buckley's "unauthorized" supplemental opposition papers he filed on June 20 and June 22, 2016, or in refusing to consider the other documents Buckley filed after May 31, 2016 without permission. (See *Bozzi v. Nordstrom, Inc.* (2010) 186 Cal.App.4th 755, 765 ["We review the trial court's refusal to consider plaintiff's 'surrebuttal' brief for an abuse of discretion. A trial court has broad discretion under rule 3.1300(d) of the California Rules of Court to refuse to consider papers served and filed beyond the deadline without a prior court order finding good cause for late submission"].)

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

23