[No. F003340. Fifth Dist. Feb. 15, 1985.]

TOMASA CARRASCO, Plaintiff, Cross-defendant and Respondent, v. JOHN CRAFT et al., Defendants, Cross-complainants and Appellants.

**COUNSEL**

Verne A. Perry for Defendants, Cross-complainants and Appellants.

Peter D. Moock for Plaintiff, Cross-defendant and Respondent.

**OPINION**

**BEST, J.**—Defendants John Craft and Jean Barton appeal from a default judgment following the denial of their motion to set aside default and default judgment. We reverse the judgment with directions.

### PROCEDURAL STATEMENT

On September 11, 1980, plaintiff filed a complaint alleging eight causes of action against defendants Craft and Barton, as well as other defendants. On March 16, 1981, defendants filed an answer to the complaint specifically denying relevant portions of the complaint and setting forth seven separate

affirmative defenses. In addition, defendants filed a cross-complaint alleging two causes of action against plaintiff for failure to pay rent and wilfully and maliciously making false and untrue statements to an unidentified reporter.

Plaintiff answered the cross-complaint on April 23, 1981. In addition, plaintiff filed a demurrer as to cross-complainants' second cause of action. After a continuance, defendants' attorney represented that he would not appear and did not intend to file a response to the demurrer so the court granted the demurrer as to the second cause of action with leave to amend. Upon defendants' failure to file an amended cross-complaint within the time allowed, plaintiff filed a motion for dismissal of the second cause of action which was granted on July 31, 1981. The first and third causes of action alleged in the cross-complaint still remain part of this action.

Ten months later, on May 25, 1982, plaintiff filed ex parte amendments to the complaint substituting true names for previously designated "Doe" defendants. Then, on May 28, 1982, plaintiff filed an application for an order to show cause, temporary restraining order and preliminary injunction to prevent a June 6, 1982, foreclosure sale by another party on property which was the subject of the action.

On June 10, 1982, the law firm representing both defendants filed substitution of attorney forms reflecting their in propria persona representation. Because the substitution of attorney forms prepared by defendants' attorney failed to give a new address for each defendant, plaintiff applied for and obtained an order permitting publication of the show cause and temporary restraining orders and a copy was served on defendants' former attorney.

Thereafter, on July 7, 1982, plaintiff's attorney served a notice of motion to strike the substitution of attorney forms filed on behalf of defendants. Defendants' attorney responded to that motion on July 19, 1982, to the effect that he could no longer represent defendants because his firm was now involved in suing defendants, and he had already advised plaintiff of an address at which notice was "best calculated" to reach defendants. The motion was granted on August 11, 1982. Prior to the motion to strike being granted, defendant Craft filed a substitution of attorney form which gave his address. Then, on August 18, 1982, defendants' attorney filed a motion to withdraw from representing defendant Barton, which was granted on September 10, 1982. The order also authorized service on defendant Barton at her last known address, a post office box.

On November 1, 1982, plaintiff filed a motion to amend the original complaint, which was granted on November 23, 1982. The amended complaint was filed on November 29, 1982, and served by mail on each of the de-

fendants on December 7, 1982. Defendants failed to file an answer to the amended complaint and default was duly entered against them on January 14, 1983, with proof of service by mail for each defendant for January 14, 1983. On January 21, 1983, the trial court entered a default judgment in the amount of $107,932.25 against both defendants.

On June 13, 1983, defendants filed a motion to set aside default and default judgment which, after several continuances, was heard and submitted on July 22, 1983. On September 19, 1983, the court filed a notice of intended decision denying the motion to set aside, which order was made and entered on September 22, 1983.

### THE PLEADINGS

Plaintiff filed a verified amended complaint on November 29, 1982, alleging as follows: Plaintiff had been in possession of real property located at 11077 Randall Circle, Armona, California. On or about December 13, 1978, plaintiff defaulted on a note in the amount of $3,500 secured by a third deed of trust to the subject property. Plaintiff's house was also encumbered by a note dated October 30, 1967, to Farmers Home Insurance secured by a first deed of trust and a note dated June 12, 1969, to Farmers Administration secured by a second deed of trust. The value of the property in June 1982 was approximately $50,000, and plaintiff's equity therein was approximately $45,000.

On or about August 1, 1979, a trust deed sale was scheduled for plaintiff's residence. Immediately thereafter, plaintiff was contacted orally by telephone by defendant Craft. Craft represented to plaintiff that he was a foreclosure specialist, that plaintiff would lose her house in foreclosure without his assistance, that he wanted to help plaintiff keep her house, that he would bring the payments on the notes secured by the third deed of trust current provided plaintiff kept all payments current on the notes secured by the first and second deeds of trust and repaid defendant Craft all sums advanced by him together with interest.

On or about August 17, 1979, defendant Craft arranged at his own expense to have plaintiff flown to the Oakland Airport where plaintiff met Craft and defendant Barton. While at the Oakland Airport, Craft and Barton presented certain written documents to plaintiff for signature. At the time the documents were presented to plaintiff, plaintiff was advised by defendants Craft and Barton that the papers presented to her were a loan agreement under which Craft and Barton agreed to pay off the note secured by a third deed of trust, thereby avoiding a trust deed sale of plaintiff's residence. Defendants further advised plaintiff that she would be able to retain title to

and possession of her house, that she would be obligated to pay defendants together with interest at such time as she became financially able to do so, that she would continue to make all payments on the note secured by the first and second deeds of trust to the residence, that it was absolutely essential that the loan transaction be consummated immediately, and that there was no time for plaintiff to either read the documents or seek advice of counsel. Plaintiff then signed the documents.

In fact, the documents presented to plaintiff consisted of a grant deed conveying plaintiff's property to defendant Barton, escrow instructions to Founder's Title Company for said conveyance, and a release for Founder's Title Company of Alameda which purported to absolve that company of any liability for that party's failure to notify the Farmers Home Administration of said conveyance. The legal effect of said instruments was to transfer title to the subject premises and all of plaintiff's equity to defendant Craft for a total consideration of approximately $100.

On or about July 2, 1980, defendant Barton sold and conveyed to her sister, Deloris A. Jones, the subject property for a total consideration of approximately $43,500 by execution of a grant deed.

Defendants' answer to the original complaint denied the allegations concerning the alleged representations by Craft and Barton other than that the transaction had to be consummated in the very near future and defendant Craft would make arrangements to fly plaintiff to Oakland and asserted the affirmative defense, among others, that plaintiff had agreed to a sale of the property and rental back from defendant Barton so as to retain possession.

## DISCUSSION

I. *Did the trial court abuse its discretion in denying defendants' motion to set aside the default and default judgment on the ground of excusable neglect?*

Code of Civil Procedure section 473 states in pertinent part: "The court may, upon such terms as may be just, relieve a party or his or her legal representative from a judgment, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise or excusable neglect. Application for such relief must be accompanied by a copy of the answer or other pleading proposed to be filed therein, otherwise the application shall not be granted, and *must be made within a reasonable time,* in no case exceeding six months, after such judgment, order or proceeding was taken; . . ." (Italics added.)

■ The general rule concerning Code of Civil Procedure section 473 review is stated in *In re Marriage of Connolly* (1979) 23 Cal.3d 590, 597-598 [153 Cal.Rptr. 423, 591 P.2d 911]: "In reviewing the evidence in support of a section 473 motion, we extend all legitimate and reasonable inferences to uphold the judgment. The disposition of such a motion rests largely in the discretion of the trial court, and its decision will not be disturbed on appeal unless there has been a clear abuse of discretion. Although precise definition is difficult, it is generally accepted that the appropriate test of abuse of discretion is whether or not the trial court exceeded the bounds of reason, all of the circumstances before it being considered. [Citations.] We have said that when two or more inferences can reasonably be deduced from the facts, a reviewing court lacks power to substitute its deductions for those of the trial court. [Citations.]" However, the standard of abuse of discretion is ameliorated somewhat by the general policy promoting a hearing on the merits. (See *Slusher* v. *Durrer* (1977) 69 Cal.App.3d 747, 753 [138 Cal.Rptr. 265].) ■ Further, the broad remedial provisions of Code of Civil Procedure section 473 "should be *liberally applied* and the power freely exercised to carry out the policy in favor of trial on the merits." (5 Witkin, Cal. Procedure (2d ed. 1971) Attack on Judgment in Trial Court, § 165, p. 3735; *Taliaferro* v. *Taliaferro* (1963) 217 Cal.App.2d 216, 220 [31 Cal.Rptr. 774].) Thus, in determining the merits of a Code of Civil Procedure section 473 motion, the court should take into account the circumstances of the case and the prejudice, if any, to the parties. (See *Martin* v. *Cook* (1977) 68 Cal.App.3d 799, 807-808 [137 Cal.Rptr. 434]; *Karlein* v. *Karlein* (1951) 103 Cal.App.2d 496, 498 [229 P.2d 831].) There is also a strong policy behind granting relief if the moving party brings the motion for relief within the statutory time. (*In re Marriage of Stevenot* (1984) 154 Cal.App.3d 1051, 1071 [202 Cal.Rptr. 116].)

In the instant case, a default was entered against the defendants on January 14, 1983, and on January 21, the trial court entered a default judgment. About five months later, on June 13, 1983, defendants filed their motion to set aside the default and default judgment. In support of their motion, the defendants filed declarations stating the reasons for their failure to file an answer to the amended complaint within the 30-day period. Defendants declared that they were not represented by counsel and believed in good faith that an answer did not have to be filed for the following reasons: (1) An answer to plaintiff's original complaint had already been filed; (2) the amended complaint made no new substantive allegations against the defendants that were not already answered in the original answer; (3) defendants believed the amended complaint was filed only for the purpose of naming new defendants and stating proper causes of action against them; and (4) since the amended complaint was served by mail only, and was not person-

ally served as was the original summons and complaint, defendants believed that the service of the amended complaint was defective and improper.

Defendants also declared that they exercised due diligence in filing the motion in that they were unable to secure funds sufficient to retain legal counsel for the motion until the middle of May 1983. Defendants believed that they were not competent to file the motion in propria persona. A supplemental supporting declaration was also filed by John Craft stating in more detail his financial situation at the time the default was entered and the steps he took to save money to hire counsel for the purpose of filing a motion on his and codefendant Barton's behalf.

The trial court, in its notice of intended decision, found that in view of the defendants' in propria persona status at the time of the service of the amended complaint and in view of the "quiet speed" in taking the default on behalf of the plaintiff, there was excusable neglect which would be sufficient to justify setting aside the default. The court further found, however, that even though defendants moved to set aside the default within the time period allowed by Code of Civil Procedure section 473, based on all the circumstances, the defendants did not act within a reasonable time and, on that basis, denied their motion.

There is no contention on appeal that the circumstances were insufficient to support a finding of excusable neglect on defendants' part. The evidence would appear to fully support the court's finding on that issue. The only real issue here is whether the court abused its discretion in finding the circumstances or reasons for not filing the motion sooner were insufficient to support the granting of the motion.

This case is somewhat similar to the case of *Benjamin* v. *Dalmo Mfg. Co.* (1948) 31 Cal.2d 523 [190 P.2d 593], where the Supreme Court reversed the granting of a motion to set aside a default judgment. There, the Supreme Court agreed with the trial court's determination that defendant's failure to file the answer in a timely manner was due to excusable neglect. ▆ The court went on to state: "However, there now remains for consideration the matter of defendant's delay in instituting proceedings to set aside the default judgment. As above indicated, the default was known to defendant's officers the day after it was taken, and on the second day the process papers were mailed to defendant's attorney for attention, but no action was taken to open the default for a period of more than three months. So far as the record discloses, defendant furnished no explanation in the trial court, either by affidavit or testimony, for its dilatory procedure. The significance of this 'time lag' stems from the provision of section 473 of the Code of Civil Procedure that application for relief thereunder 'must be made *within a*

*reasonable time,* in no case exceeding six months, . . .' (Emphasis added.) This time requirement is discussed in *Smith* v. *Pelton Water Wheel Co.,* 151 Cal. 394 at page 397 . . ., as follows: 'The six months' limitation there provided is simply a limitation upon the power of the court to grant any relief, regardless of any question either as to the merits of the application, or as to whether or not the application was made within what might be held to be a reasonable time under the circumstances. Under this statute, in addition to being made within the six months' period, the application must be made within "a reasonable time" and what is a reasonable time in any case depends upon the circumstances of that particular case.' While in 'the determination of that question, a large discretion is necessarily confided to [the trial] court' . . . there must be some showing—some evidence—as the basis for the exercise of such discretion." (*Id.,* at p. 528.)

■ Unlike the *Benjamin* case, the defendants in this case did provide an excuse for their failure to diligently file their motion to set aside the default, i.e., that they had no money to hire the attorney to file the motion on their behalf. Under *Benjamin,* however, whether under these circumstances the filing five months after the default was entered was within a reasonable time was a question within the large discretion of the trial court.

In the instant case, the trial court did not find the five-month time lag to be within a reasonable time, stating as follows: "The record is clear that Notice of Default was mailed on January 14, 1983 and that within four days after receipt of the Notice of Default Defendant Craft contacted his present attorney Mr. Perry, who sought a stipulation to set aside the default, which request was denied. Subsequently, judgment was entered against Defendants on January 21, 1983. Although he must have known the significance of the default being entered against him after talking to Mr. Perry, defendant Craft took no steps to rectify the matter, did not notify the Court, nor did he appear in any manner to object to judgment being entered on default. Instead, the defendant, without sufficient justification or excuse, waited four months until mid May to obtain counsel and moving papers were not filed until five months after the default had been entered. A defendant's lack of funds, or concern with other matters, do not justify relief under Code of Civil Procedure section 473[.] *Davis* v. *Thayer,* 13 [*sic*] CA 3d 892 (1980)."

In *Davis* v. *Thayer* (1980) 113 Cal.App.3d 892 [170 Cal.Rptr. 328], the Court of Appeal affirmed the trial court's denial of defendant's motion to set aside a default. One of the reasons advanced by Thayer for his failure to file an answer was that he did not have funds. The court stated, "If he had no funds, as he contends, he could have obtained a waiver of the fee by petition in forma pauperis and he could have consulted attorneys in legal

aid offices or proceeded in propria persona." (*Id.*, at pp. 906-907, fn. omitted.) In a footnote, the court noted that it had been referred to no authority for the proposition that poverty permits a defendant to ignore an action filed against him.

On the other hand, in *Buckert* v. *Briggs* (1971) 15 Cal.App.3d 296 [93 Cal.Rptr. 61], the Court of Appeal found no abuse of discretion in the trial court's granting of a motion to vacate a default. The court stated: "Whether the delay in question was reasonable depends upon the circumstances. Contrary to defendant's claim, plaintiffs explained the reason for the delay. Upon learning the trial had taken place in their absence they immediately contacted their attorney who promised to take action forthwith. They wrote the judge presiding over the trial and received a letter from him advising they had six months within which to move to set aside the judgment and, acting upon this advice, were entitled to believe they might make their application at any time within this six-month period; contacted another attorney who delayed acceptance of employment until paid a retainer which they were unable to pay forthwith but attempted to raise the money through the sale of property; and when attempts were unsuccessful, were able to borrow sufficient money to proceed within the six-month period." (*Id.*, at p. 302.) Taken together, the *Davis* and *Buckert* cases are authority for the proposition that in exercising its discretion the trial court may properly take into consideration a defendant's lack of funds to obtain counsel in determining whether a motion to set aside a default was brought within a reasonable time; however, lack of funds does not, as a matter of law, require the setting aside of the default.

The record shows that, here, the trial court did take into consideration defendants' lack-of-funds excuse and we cannot say that the court abused its discretion in determining that said excuse did not tip the scale in favor of setting aside the default in light of the long delay in filing the motion.

■ Defendants also contend that plaintiff's inability to assert any prejudice suffered from the delay of the trial on the merits is one of the factors that the court may properly consider in determining whether a defendant acted diligently, and very slight evidence will be required to justify a court in setting aside the default. This is true. (*Weitz* v. *Yankosky* (1966) 63 Cal.2d 849, 857 [48 Cal.Rptr. 620, 409 P.2d 700]; *Buckert* v. *Briggs, supra,* 15 Cal.App.3d 296, 302-303.) There is, however, no indication that the trial court did not consider this factor in exercising its discretion in denying the motion. In any event, "the fact that plaintiff fails to show any prejudice resulting from defendant's claimed lack of diligence, although important, is not decisive." (*Weitz* v. *Yankosky, supra,* at p. 857.)

■ Finally, it appears defendants are contending that plaintiff had a duty to stipulate to set aside their defaults and that the plaintiff's attorney's failure and refusal to so stipulate was another instance of "quiet speed" and that such refusal is grounds itself to set aside the default.

In the recent case of *Bellm* v. *Bellia* (1984) 150 Cal.App.3d 1036 [198 Cal.Rptr. 389], the Court of Appeal held that "quiet speed" will not as a matter of law require reversal of an order of the trial court refusing to set aside a default. The court stated at page 1038: "Bellia also contends that counsel for Bellm should have given notice of the impending default to the attorney who represented Bellia in the other case in which the two attorneys were adversaries. While as a matter of professional courtesy counsel should have given notice of the impending default, and we decry this lack of professional courtesy [citation], counsel was under no legal obligation to do so. [Citations.] By taking a default without giving notice, counsel took the risk that the trial court would grant relief from the default [citation], but the failure to notify did not *require* the court to grant relief. No abuse of discretion is evident." Again, the quiet speed with which the default was taken in the present case was a factor the trial court could consider and, in fact, did consider in determining whether or not to set aside the default. However, the factors in favor of plaintiff's motion did not, as a matter of law, take away the court's discretion to grant or deny the motion.

II. *Did the trial court err in not granting the motion to set aside the default and default judgment because the judgment is void?*

■ Subsequent to filing their motion and supporting documents to set aside the default, defendants submitted supplemental points and authorities in support of their motion and urged that the default and default judgment were void insofar as the amended complaint made no new substantial allegation against either defendant and, therefore, no new answer was required. Plaintiff's attorney objected to the court considering the "voidness ground" because the original notice did not contain that particular ground. Although defendants urged that the court could on its own motion examine the judgment roll and determine whether the original answer was sufficient, the court believed that particular ground was not properly before it. The court stated: "As to whether or not the judgment was void is different and may be raised by you at a later time."

We hold that the matter was properly before the court and should have been considered by it in ruling on the motion.

The notice of motion to set aside default and default judgment stated in pertinent part: "The motion will be made pursuant to the provisions of

Section 473 of the Code of Civil Procedure on the grounds that the default and default judgment entered against defendants in this action were taken against them by reason of mistake, inadvertence, and/or excusable neglect.

"The motion will be based on this Notice of Motion, the attached declarations, memorandum of points and authorities and verified answer to amended complaint, as well as the pleadings, files, and records in the above entitled action, and such oral and documentary evidence as may be presented at the hearing on this Motion."

The supporting points and authorities and the declarations of John Craft and Jean Barton all set forth that one of the reasons defendants had not filed an answer to the amended complaint was that an answer to the original complaint had been filed, and that the amended complaint contained no new substantive allegations which were not answered in the answer previously filed.

Furthermore, the supplemental points and authorities filed and served by defendants' attorney prior to the hearing on the motion specifically urged this as a ground for setting aside the default.

Even though the notice of motion fails to state a particular ground for the motion, where the notice states, as here, that the motion is being made upon the notice of motion and accompanying papers and the record, and these papers and the record support that particular ground, the matter is properly before the court and the defect in the notice of motion should be disregarded. (*Savage* v. *Smith* (1915) 170 Cal. 472, 474 [150 P. 353].)

The question of whether the default judgment should be voided being a legal one determinable by examination of the judgment roll, defendants request this court to decide the matter. Instead, plaintiff urges us to decline to decide this question and to remand it to the trial court for determination there. In furtherance of the efficient administration of justice, we address the issue.

In *Gray* v. *Hall* (1928) 203 Cal. 306 [265 P. 246], the court, in a watershed decision, stated as follows: "It has been generally held that where a plaintiff amends his declaration or complaint so as to change the cause of action, or add a new one, it constitutes an abandonment of the original issues, and judgment by default may be taken against the defendant if he fails to file a new or amended answer or plea within the time allowed therefor, notwithstanding the original answer or plea is still on file. [Citation.] This rule is without application, however, where the amendment is merely as to formal or immaterial matters, and does not change the cause of action;

nor does it apply where the original plea or answer set forth a sufficient defense to the declaration or complaint as amended. [Citations.]

" . . . . . . . . . . . . . . . . . . . . . .

". . . 'In short, when a complaint is amended after answer, the defendant is not bound to answer *de novo*. He may do so if he chooses; but, if he does not elect to do so, his original answer stands as his answer to the amended complaint; and in such case he will not be in default except as to the additional facts set up in the amended complaint, and not put in issue by the answer. . . .' " (*Id.*, at pp. 310-311, 313.)

The court went on to hold that entry of a default in a case where the original answer can stand as an answer to the amended complaint constitutes error.

Plaintiff asserts that there are nine differences between the original complaint and the amended complaint and, consequently, the original answer cannot stand as an answer to the amended complaint.

(1) Plaintiff contends that the amended complaint makes it clear that both defendants John Craft and Jean Barton actively participated in and made false representations to plaintiff, whereas the original complaint is somewhat unclear and, for the most part, alleges that only defendant John Craft actively participated in the fraud. A review of both complaints establishes that the amended complaint does more clearly allege that Jean Barton participated in the false representations; however, the cause of action itself is not changed.

(2) The second change purports to correct an inaccuracy stated in the original complaint. It has to do with the allegation that plaintiff was to keep payments current on the notes secured by the first and second deeds of trust, whereas the original complaint had alleged that defendants were to make these payments. Again, it appears that this "correction" does not change the cause of action.

(3) This is related to No. (2) above which corrected allegations regarding who was to make the payments on the deeds of trust.

(4) The amended complaint adds a new allegation specifying the alleged value of the property and plaintiff's equity interest therein. Again, this addition does not change the cause of action.

(5) The amended complaint makes new allegations concerning the defendant Deloris Jones and defendant Banco Mortgage Company. These allegations do not appear to relate to defendants John Craft and Jean Barton.

(6) The amended complaint makes new allegations concerning Deloris Jones, Banco Mortgage Company and Standard Federal Savings and Loan Association. Again, these changes do not relate to the defendants Craft and Barton.

(7) Same as No. (5).

(8) Same as Nos. (5) and (7) above.

(9) The amended complaint alleged punitive damages in the amount of $500,000, whereas the original complaint asked for punitive damages in the amount of $75,000. Again, it appears that this change did not change the cause of action.

Also, while the specific denials and admissions made in the answer filed by defendants could not be applied directly to the amended complaint insofar as the amended complaint had changed the paragraphs and the way that it was written, the answer did set forth a sufficient defense to the complaint as amended. A comparison of the original answer and the proposed answer to the amended complaint establishes that the affirmative defenses set forth in each of the answers are exactly the same. The only difference is in the numbering of the paragraphs of each of the defenses.

Finally, in plaintiff's notice of motion to file amended complaint, plaintiff stated as follows: "The motion will be made on the ground that the amendment is in the furtherance of justice in that the original complaint as filed might not state all causes of action against BANCO MORTGAGE COMPANY, STANDARD FEDERAL SAVINGS AND LOAN ASSOCIATION, and T. D. SERVICE COMPANY all of whom were named as DOES in the original complaint and whose names were added to the original complaint by amendment. The original complaint also contains ambiguities, insufficiencies, and surplusage, all of which will be eliminated by the filing of the amended complaint as attached hereto." Thus, it appears that plaintiff's own characterization of the amended complaint contradicts the assertion on appeal that substantial changes were made.

A review of both of the complaints also indicates that the original alleged eight causes of action, while the amended alleges seven causes of action. The amended complaint did not contain three causes of action that were in the original as follows: No. 3, negligent misrepresentation-rescission, No.

6, mistake-rescission, and No. 7, inadequate consideration-rescission. No. 5 of the original complaint—undue influence—is not alleged as a separate cause of action in the amended complaint and it is not clear whether it is alleged as part of the first cause of action in the amended complaint. The amended complaint adds two causes of action for cancellation of instruments (causes of action three and four) but both of these relate to different defendants—Banco Mortgage and Standard Federal. As to defendants Craft and Barton, no new causes of action are stated in the amended complaint. Thus, as a matter of law, defendants' original answer could stand as an answer to the amended complaint and, therefore, it was error to enter the default and default judgment on the basis that the defendants failed to file an answer to the amended complaint.

## DISPOSITION

The judgment is reversed and the trial court is directed to enter its order setting aside the default and default judgment and, for the convenience of the parties and the court, permitting the filing of defendants' proposed answer to the amended complaint.

Hanson (P. D.), Acting P. J., and Hamlin, J., concurred.