Filed 4/19/21  Asphalt Professionals v. Fairland Liquidating Corp. CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| ASPHALT PROFESSIONALS, INC., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> FAIRLAND LIQUIDATING CORPORATION, <br><br> Defendant and Respondent. | 2d Civ. No. B307394 <br> (Super. Ct. No. SC044181) <br> (Ventura County) |

Asphalt Professionals, Inc. (API) appeals an order granting a motion to lift a stay that had prevented Fairland Liquidating Corporation (FLC), formerly known as Fairland Construction, Inc., from enforcing a money judgment against API.  The stay was issued because FLC's corporate status had been suspended.  FLC subsequently revived its corporate status and moved to lift the stay.  We conclude, among other things, that the trial court

properly granted FLC's motion to lift the stay and enforce its judgment against API. We affirm.[1]

FACTS

API filed an action against Fairland Construction, Inc. alleging various causes of action, including breach of a construction contract. The construction contract contained an attorney fee provision.

Fairland Construction, Inc. and two other joined defendants ultimately prevailed in litigation against API. These defendants filed a motion for costs and attorney fees. API opposed the motion.

In 2013, the trial court ruled the motion for attorney fees and costs was untimely. Fairland Construction, Inc. and the two other defendants appealed. In 2014, we reversed and ruled the attorney fee motion was timely.

The trial court on remand granted that motion. On December 1, 2014, the trial court awarded attorney fees "collectively" to defendant Fairland Construction, Inc. and two other joined defendants in the amount of $390,000.00, costs in the amount of $18,628.75, and additional attorney fees incurred on the prior successful appeal in the amount of $5,375.09.

On January 15, 2015, the trial court ruled, "The award of costs and fees as to Fairland Construction, Inc., is stayed based upon the evidence that it is a suspended corporation. Revenue and Taxation Code § 23301. Upon *proof* of reinstatement of Fairland's corporate status, *the Court will lift the stay*." (Italics added.)

API appealed the attorney fee and cost judgment. We affirmed that judgment on January 20, 2016. We held defendant

---

[1] We grant FLC's motions for judicial notice.

Fairland Construction, Inc. had "prevailed on" an "alter ego issue" raised by API, and it was "entitled to attorney fees based on the attorney fee provision of the contract" upon which API had unsuccessfully based its alleged claim for liability against this defendant. The remittitur issued on March 30, 2016. At that time Fairland Construction, Inc. was not able to enforce the money judgment it had obtained against API. The January 15, 2015, stay order the superior court had issued as a result of its suspended corporate status was still in effect.

On March 9, 2020, Fairland Construction, Inc. filed a notice of motion and motion seeking to lift the stay with proof that its corporate status had been revived. It claimed that its revived status, as shown by a document from the California Secretary of State, entitled it to proceed with litigation and to now enforce the money judgment it had obtained against API.

On July 31, 2020, the trial court held a hearing on the motion to lift the stay. API responded to the motion and its counsel objected to the attempt to lift the stay. (There is no reporter's transcript, recording, or settled statement regarding that hearing in the record on appeal.)

The trial court then authorized the parties to submit additional briefs and documents regarding Fairland Construction, Inc.'s corporate name change. In August 2020, Fairland Construction, Inc. filed an application for the court "to formally recognize" its new name as "Fairland Liquidating Corporation" (FLC). It attached documentary proof to show that it had lawfully changed its corporate name and that its new name had been approved by the California Secretary of State. API filed an opposition.

On August 24, 2020, the trial court issued an order granting Fairland Construction, Inc.'s motion to lift the stay that had precluded it from enforcing its judgment against API. That order also amended the judgment to reflect the current "true name" of the defendant to be "Fairland Liquidating Corporation [FLC] formerly known as Fairland Construction, Inc." API filed an appeal.

DISCUSSION

*The Record on Appeal*

API contends the trial court authorized FLC to submit procedurally deficient ex parte applications to prove it had revived its corporate status and it erred by lifting the stay and allowing enforcement of the judgment.

But a critical aspect of this appeal involves what occurred at the July 31, 2020, hearing on FLC's motion to lift the stay. API has not produced a reporter's transcript, recording, or a settled statement regarding that hearing. "A fundamental principle of appellate practice is that an appellant ' "must affirmatively show error by an adequate record. . . . Error is never presumed . . . . 'A judgment or order of the lower court is *presumed correct.* All intendments and presumptions are indulged to support it on matters as to which the record is silent . . . .' " ' " (*Null v. City of Los Angeles* (1988) 206 Cal.App.3d 1528, 1532.) Given the incomplete record, there is a strong initial presumption that the validity of various trial court rulings and procedures may be supported by the portions of the record that are not before us. (*Ibid.*)

*Validity of the Procedure FLC Used to Lift the Stay*

On January 15, 2015, the trial court stayed FLC's enforcement of the judgment it had against API "based upon the

4.

evidence that it is a suspended corporation."  But it also provided that "[u]pon proof of reinstatement of Fairland's corporate status, the Court will lift the stay."  The trial court did not specify the type of procedure to be used to prove corporate status had been reinstated.

API contends FLC filed an ex parte application that was procedurally deficient to lift the stay.

FLC responds, "There is simply no suggestion, much less any evidence, that Judge Borrell vacated the stay based on an ex parte application. . . .  Appellant is asking this Court to review a ruling on hearing that simply did not occur."  The procedural history supports FLC's position.

FLC notes that it *initially* filed an "ex parte application" to "lift stay of enforcement of judgment" in February 2020.  That application contained a notice of a hearing date and time, an attached memorandum of points and authorities, a declaration of counsel, and exhibits showing that its corporate status had been revived.  The application contained a proof of service showing service by "facsimile" on counsel for API dated February 6, 2020.  On February 10, 2020, API filed an opposition which included a declaration by API's counsel.  But, as FLC notes, the hearing on that application did not take place because the court "closed in response to the COVID 19 pandemic."

*The Motion to Lift the Stay*

On March 9, 2020, FLC filed a *notice of motion and motion* to lift the stay which contained a memorandum of points and authorities, declaration of counsel, and exhibits showing that its corporate status was revived.  The notice of motion and motion showed a hearing date of March 26, 2020, at 8:30 a.m., in

Department 40. It contained a proof of service showing service on API.

This was a valid motion giving proper notice to API of the grounds and subject matter of the motion to lift the stay, with the required supporting documents. (Cal. Rules of Court, rule 3.1112(a) & (b); *Savage v. Smith* (1915) 170 Cal. 472, 474; *Carrasco v. Craft* (1985) 164 Cal.App.3d 796, 808; *Estate of Parks* (1962) 206 Cal.App.2d 623, 632.)

FLC claims the hearing on this motion "was rescheduled *by the trial court* for July 31, 2020, as the Court reopened for telephonic hearings." (Italics added.)

Consequently, on July 6, 2020, FLC served a "notice of hearing" showing a changed hearing date of July 31, 2020, at 8:30 a.m., in Department 40.

API contends serving this notice of hearing by itself was defective. It suggests FLC should have attached a notice of motion and motion, points and authorities, declaration and supporting exhibits. But that would be needless duplication. FLC had already served API with the motion. The motion was made at the time it was originally filed and served. (*Arambula v. Union Carbide Corp.* (2005) 128 Cal.App.4th 333, 341.) The notice of hearing document was essentially only notice of a changed hearing date, not the filing of a new motion. (*Ibid.*)

Moreover, API's counsel appeared at the July 31 hearing and opposed the lifting of the stay. The claim that the trial court erred at that hearing by not properly considering API's challenge to the procedural validity of the motion may not be sustained because API did not include a record of that hearing. (*Null v. City of Los Angeles*, *supra*, 206 Cal.App.3d at p. 1532; see also *In re Marriage of Obrecht* (2016) 245 Cal.App.4th 1, 9 [given the

absence of a reporter's transcript of the hearing and proof that a party attended the hearing, the Court of Appeal would presume that party had "submitted to the court's jurisdiction by making a general appearance"].)

Consequently, from the record we have, API has not shown it had inadequate notice of FLC's "motion" to lift the stay. Nor has it shown that the trial court erred by ruling on that motion. (*Savage v. Smith, supra*, 170 Cal. at p. 474; *Carrasco v. Craft, supra*, 164 Cal.App.3d at p. 808.)

### *Evidence of Revival of FLC's Corporate Status*

API contends there was insufficient proof FLC had revived its corporate status.

FLC claims it presented sufficient evidence. We agree.

FLC produced a copy of a September 6, 2019, "certificate of status" signed by Alex Padilla, as Secretary of State of California, stating, "The records of this office indicate the entity [FLC] is authorized to exercise all of its powers, rights and privileges in the State of California." Counsel for FLC submitted a declaration stating the attached certificate was "a true and correct copy" of that original certificate.

A certificate from the California Secretary of State showing revival of corporate powers is admissible evidence. (*Aspen Grove Condominium Assn. v. CNL Income Northstar LLC* (2014) 231 Cal.App.4th 53, 59.) It shows "the corporation may be allowed to carry on litigation." (*Benton v. County of Napa* (1991) 226 Cal.App.3d 1485, 1490.) In this case it means the right to file the motion to lift the stay. (*Ibid.*)

### *FLC's Standing to Enforce the Judgment*

API contends FLC had no "standing" to seek revival or enforcement of the judgment because: 1) it "was not a named

7.

'party' in this action," and 2) it had not "complied with the requirements to become a legitimate 'party' to the action." (Boldface & capitalization omitted.)

FLC responds that 1) it was not a new party to this litigation; 2) defendant Fairland Construction, Inc. is the same corporation as FLC; 3) Fairland Construction, Inc. merely changed its name; and 4) the trial court properly declared the new name of the company and authorized it to lift the stay. We agree.

Every California corporation authorized to do business in this state has a registered file number with California's Secretary of State. (Corp. Code, §§ 110, subd. (d), 1157, subd. (e)(2), 2205.5, subds. (c) & (d), 12214, subd. (d).) The registered "file number" for defendant Fairland Construction, Inc. is *C2674170*. The registered file number for FLC is *C2674170*. The file numbers are the same because it is the same corporation.

Citing *Kaufman & Broad Communities, Inc. v. Performance Plastering, Inc.* (2006) 136 Cal.App.4th 212, API contends FLC had to file a motion to intervene into this case before it filed the motion to lift the stay. But FLC does not have to intervene because it is already a party in this case. The only difference here is that the corporation has a new name.

*Impact of the Name Change*

API suggests that a corporate name change means the corporation is a new corporate entity.

But a "change in name does not affect the identity of a corporation." (*Mutual Bldg. & Loan Ass'n of Long Beach v. Corum* (1934) 220 Cal. 282, 292.) The name change " 'did not add a new defendant to the judgment, but merely set forth the correct

8.

name.' " (*Thomson v. L.C. Roney & Co.* (1952) 112 Cal.App.2d 420, 426.)

The name Fairland Liquidating Corporation (FLC) is the name the Secretary of State recognizes as the official current name of the former Fairland Construction, Inc.

A trial court may rely on the validity of that determination by this state official who has jurisdiction over corporations. (*Westlake Park Inv. Co. v. Jordan* (1926) 198 Cal. 609, 616 [Secretary of State determines "whether a corporate organization has been accomplished in conformity with the statutory laws"]; *Roman Catholic Bishop of San Jose v. Bowen* (2013) 219 Cal.App.4th 484, 498 [Secretary of State's duty includes reserving " 'names of corporations meeting the requirements of the Corporations Code' "]; *Preis v. American Indemnity Co.* (1990) 220 Cal.App.3d 752, 759 [the "statutory presumption an official duty has been regularly performed applies to official writings"].) "Such a presumption is evidence." (*Baird v. City of Fresno* (1950) 97 Cal.App.2d 336, 340.)

The reliability of corporate documents filed by the Secretary of State is high because this state official has a duty to only file a corporate document "if it conforms to law." (Corp. Code, § 12214, subd. (a).) Consequently, courts properly rely on the validity of corporate documents filed by the Secretary of State. (Corp. Code, § 201, subd. (b); *O'Gara Coach Co., LLC v. Ra* (2019) 30 Cal.App.5th 1115, 1121, fn. 2; *Aspen Grove Condominium Assn. v. CNL Income Northstar LLC*, *supra*, 231 Cal.App.4th at p. 59 [Court of Appeal relied on certificate from Secretary of State as proof of current corporate status].)

*FLC's Procedure to Change Its Name*

API suggests the Secretary of State's approval of the name change is not dispositive because the name change was invalid as a matter of law. It claims a suspended corporation may not change its name until after its corporate powers are revived. It argues that because FLC changed its name while it was a suspended corporation, the name change is invalid. We disagree.

The powers of a suspended corporation are highly restricted. But there is an exception in case law, and statute, that gives a suspended corporation "the power to amend its articles to set forth a new name." (*Boyer v. Jones* (2001) 88 Cal.App.4th 220, 225; *Grell v. Laci Le Beau Corp.* (1999) 73 Cal.App.4th 1300, 1306 [a suspended corporation has a statutory right to amend "the articles of incorporation" to "establish a new corporate name"]; see also Rev. & Tax. Code, § 23301.)

A declaration by FLC's counsel showed Fairland Construction, Inc. had amended its articles of incorporation to change its name to Fairland Liquidating Corporation (FLC). A copy of the certificate of amendment of the articles of incorporation was attached. That name change was approved by the shareholders and board of the corporation. That certificate of amendment of the articles was submitted to the Secretary of State. The Secretary of State filed the amended articles and approved the new name.

API dismisses the Secretary of State's approval. But the Secretary of State determines whether articles of incorporation meet the requirements of state law and authorizes the validity of corporate name changes. (Corp. Code, §§ 201, subd. (b), 1157, 2106, 2107, 12214, subd. (a); *Cranford v. Jordan* (1936) 7 Cal.2d 465, 466-467; *Westlake Park Investment Co. v. Jordan*, *supra*, 198

Cal. at p. 616; *Roman Catholic Bishop of San Jose v. Bowen*, *supra*, 219 Cal.App.4th at pp. 495-496, 498.)

API filed an opposition to FLC's corporate name change documents. But it did not present evidence to show why the Secretary of State lacked the authority to authorize the corporate name change.

*Fairness of the Court's Procedure on the Name Change Issue*

FLC's motion to lift the stay contained evidence showing the name change. The trial court's minute order of August 24, 2020, and another document show that at the hearing on July 31, 2020, the trial court decided to allow FLC to file a post-hearing "ex parte" application with the court to amend the judgment to reflect its new name. It permitted API to file a response, and it decided that a new hearing on this name change issue was not necessary. The parties filed their respective post-hearing motion papers on this issue on August 7, 2020, while the motion to lift the stay was still under submission. On August 24, 2020, the court ruled on the motion to lift the stay and granted the motion to amend the judgment to reflect FLC's correct name.

API challenges the procedure the trial court authorized to change the name on the judgment and the validity of FLC's ex parte application.

API suggests allowing submission of additional briefs and documents regarding the corporate name change issue after the July 31 hearing was error.

But we do not know what occurred at the July 31 hearing that prompted the trial court to request the submission of additional post-hearing briefs and documents on the name change issue. API did not produce a record of that hearing. Consequently, we may not presume error based on such an

11.

incomplete record.  (*Null v. City of Los Angeles*, *supra*, 206 Cal.App.3d at p. 1532; see also *Hood v. Gonzales* (2019) 43 Cal.App.5th 57, 79 [on issues "involving the abuse of discretion standard of review, a reporter's transcript or an agreed or settled statement of the proceedings is indispensable"].)

*Compliance with the California Rules of Court*

API claims it did not receive timely notice of FLC's post hearing ex parte application on the name change issue as required by California Rules of Court, rule 3.1203 ("rule 3.1203"). It contends it received the application at 12:09 p.m., which did not comply with the 10:00 a.m. deadline in rule 3.1203(a).  But because the court ruled against API, and given API's failure to obtain a settled statement or findings on this issue, we must presume the trial court may have determined this court rule did not apply here, or, if it did, noncompliance was excused or not substantial, or that it may have impliedly found against API for other reasons.  (*Fladeboe v. American Isuzu Motors, Inc.* (2007) 150 Cal.App.4th 42, 48-49; *Null v. City of Los Angeles*, *supra*, 206 Cal.App.3d at p. 1532.)  API has not shown that the court intended rule 3.1203 to apply to this *post-hearing* procedure.  In the court's written order, it made *no reference* to this rule of court.  The rule relates to notice involved for an "expedited ex parte *hearing*." (*Newsom v. Superior Court* (2020) 51 Cal.App.5th 1093, 1098, italics added.)  But here the court ruled there would be no hearing on this ex parte application.  Papers would simply be submitted to the court in chambers while this matter was under submission.  FLC's and API's documents listed *no hearing date*.  Because there is no record of the July 31 hearing, we do not know what service time requirements, if any, the court imposed

12.

for these post-hearing documents, and we will not presume error. (*Null*, at p. 1532.)

Moreover, even had API shown noncompliance with the rules of court, this " 'is not reversible error unless prejudice is shown.' " (*In re Marriage of Steiner & Hosseini* (2004) 117 Cal.App.4th 519, 524; see also *Baker v. Eilers Music Co.* (1917) 175 Cal. 652, 656-657; *Robert v. Stanford University* (2014) 224 Cal.App.4th 67, 72; *Estate of Cooper* (1970) 11 Cal.App.3d 1114, 1121-1122.) API has not made such a showing. It filed its response on the merits and did not request a continuance. (*Carlton v. Quint* (2000) 77 Cal.App.4th 690, 697.) It has not shown what additional information it could have produced if given additional time or what difference it would make for the final result.

*Due Process*

API also has not supported its claim that it was denied "due process." It had notice, a hearing, and more than one opportunity to challenge the evidence FLC presented regarding its name change. (*Goldberg v. Kelly* (1970) 397 U.S. 254, 267-268 [25 L.Ed.2d 287, 299].) Proof of FLC's name change had been provided with FLC's motion to lift the stay. The court considered FLC's post-hearing August 7 documents and API's August 7 "written opposition" before it ruled. Consequently, API had *three opportunities* to challenge the name change evidence – 1) in response to FLC's motion to lift the stay, 2) at the July 31 hearing, and 3) in its post-hearing brief. API's August 7 post-hearing written opposition did not include evidence to challenge the name change documentation. API's counsel's declaration did not contain an offer of proof about any evidence it could provide.

13.

Courts may request parties to file post-hearing briefs on issues of concern to the court.  (Gov. Code, § 68081; *People v. Garcia* (2002) 97 Cal.App.4th 847, 854; *Monarch Healthcare v. Superior Court* (2000) 78 Cal.App.4th 1282, 1286.)  Here the trial court could reasonably find FLC proved its name change at the July 31 hearing, and therefore the name on the judgment had to be corrected.  It could decide it was a better procedure for a party to request correction than for the court to correct it sua sponte.  (*Carpenter v. Pacific Mutual Life Insurance* (1939) 14 Cal.2d 704, 707 ["corrections may be made . . . either on motion of an interested party, or on the court's own motion"]; *Misik v. D'Arco* (2011) 197 Cal. App.4th 1065, 1075; *Lang v. Superior Court* (1961) 198 Cal.App.2d 16, 17-18.)  The " ' "precise dictates of due process are flexible and vary according to context." ' "  (*Hood v. Gonzales*, *supra*, 43 Cal.App.5th at p. 80.)  The procedure the court selected was not unfair or unauthorized.  (*Dorland v. Dorland* (1960) 178 Cal.App.2d 664, 670; see also *Misik*, at p. 1075; *Lang*, at pp. 17-18.)  Moreover, API has not shown how a different procedure from the one the trial court selected would lead to a different result.  Nor has it cited to evidence in the record to challenge the validity of the Secretary of State's documents.

*Amending the Judgment to Add the New Name*

The trial court rejected API's challenge to its authority to amend the judgment to reflect FLC as the new corporate name. It amended the judgment to change the name of defendant Fairland Construction, Inc. to FLC, finding this was necessary "to *reflect the true name* of the Fairland entity."  (Italics added.)  The court did not err.

A court's authority to amend a judgment to reflect a party's true name is well established. (*Leviston v. Swan* (1867) 33 Cal. 480, 484; *People v. Landon White Bail Bonds* (1991) 234 Cal.App.3d 66, 77; *Russ v. Smith* (1968) 264 Cal.App.2d 385, 390; *Mirabito v. San Francisco Dairy Co.* (1935) 8 Cal.App.2d 54, 57.)

Here defendant Fairland Construction, Inc. was a party to the action. "Since the court had jurisdiction over the defendant, it had jurisdiction to make its judgment reflect the defendant's true name." (*Thompson v. L.C. Roney & Co., Inc.*, *supra,* 112 Cal.App.2d at p. 427.) This name change did not prejudice the rights of API. The change "does not effect an enlargement of the original judgment nor is it a modification thereof to correct a supposed error of law. It is simply an amendment whose purpose is to designate the real name of the judgment [creditor]." (*Id.* at p. 425.) " 'That a court *may at any time amend its judgment* so that the latter will properly designate the real defendants is not open to question.' " (*Id.* at p. 426, italics added.)

*Corporate Revival Impact and Finality of Judgment Issues*

API contends that because Fairland Construction Inc.'s corporate powers were suspended on December 2, 2013, it had no authority to "act in any way" thereafter. It suggests that, despite the proof of a certificate of corporate status revival, API may now challenge the validity of the procedures FLC *previously* used to obtain attorney fees and the prior final judgment awarding them.

But API has not considered the remedial retroactive scope of a corporate revivor certificate and the issue of the finality of the judgment. After a corporation obtains "a certificate of revivor of its corporate status," it may continue litigation. (*Rochin v. Pat Johnson Manufacturing Co.* (1998) 67 Cal.App.4th 1228, 1236-1237.) A revivor certificate will validate " 'the procedural steps

15.

taken on behalf of the corporation while it was under suspension.' " (*Id.* at p. 1237.) This includes "validating otherwise invalid prior proceedings." (*Benton v. County of Napa*, *supra*, 226 Cal.App.3d at p. 1490.) "[A]s to matters occurring prior to judgment, the revival of corporate powers has the effect of validating the earlier acts." (*Peacock Hill Assn. v. Peacock Lagoon Constr. Co.* (1972) 8 Cal.3d 369, 373.) "[R]evival of corporate powers enables the previously suspended party to proceed with the prosecution or defense of the action and validates a judgment obtained during suspension." (*Center for Self-Improvement & Community Development v. Lennar Corp.* (2009) 173 Cal.App.4th 1543, 1553.) It also validates an appeal filed by the suspended corporation during its period of suspension. (*Bourhis v. Lord* (2013) 56 Cal.4th 320, 323.)

The trial court awarded attorney fees and costs to Fairland Construction, Inc. (now FLC). On January 15, 2015, it stayed that judgment in its favor because "it is a suspended corporation." But the court gave FLC the "right" to enforce that judgment once FLC's corporate status was restored. We affirmed the judgment awarding attorney fees and costs on January 20, 2016. The remittitur issued on March 30, 2016. That judgment is now final and binding on API, and API may not collaterally attack it. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455; *Estate of Buckley* (1982) 132 Cal.App.3d 434, 446; see also *City of Santa Paula v. Narula* (2003) 114 Cal.App.4th 485, 490 ["The doctrines of res judicata and collateral estoppel prevent a losing party from relitigating causes of action or issues against the prevailing party after a final judgment"]; see also *Sargon Enterprises, Inc. v. University of Southern California* (2013) 215 Cal.App.4th 1495, 1506 [appellate

16.

court's decision constitutes the law of the case and "must be adhered to in all subsequent proceedings"].)

API previously had a full opportunity to raise any challenges it had to the judgment in the trial court and on appeal. It is now too late for API to raise claims that the issues were not correctly decided, raise new issues, or challenges that could have, or should have, been raised in the earlier trial court and appellate proceedings that were finally decided years ago. (*Sargon Enterprises, Inc. v. University of Southern California*, *supra*, 215 Cal.App.4th at pp. 1505-1506; *City of Santa Paula v. Narula*, *supra*, 114 Cal.App.4th at pp. 490-491.)

*FLC's Current License to Enter into Construction Contracts*

API claims the trial court erred by not staying enforcement of the attorney fee judgment at the hearing because FLC is not currently licensed to enter into construction contracts.

But this claim fails because API did not produce an adequate record. Rulings on this issue are not mentioned in the trial court's written decision. There is no settled statement. API did not obtain written findings on it. There is no reporter's transcript of the July 31 hearing. There is no stipulation specifying all the issues the court decided at the hearing. API had the duty to develop the "fullest possible" record. (*Tudor Ranches, Inc. v. State Comp. Ins. Fund* (1998) 65 Cal.App.4th 1422, 1433; see also *People v. Garcia* (2010) 185 Cal.App.4th 1203, 1214 [appellate courts are not required to consider claims of erroneous rulings "that could have been, but were not, challenged below"].) Because of the absence of a record, we do not know FLC's response to this issue at the hearing, what evidence was presented there, or how the court ruled. Consequently, we will not presume trial court error based on this

17.

incomplete record.  (*Null v. City of Los Angeles*, *supra*, 206 Cal.App.3d at p. 1532.)

But even on the record we have, and assuming the facts API alleges, the result does not change.  API has not shown how FLC's *current* construction contract license status prevents it from enforcing a *final prior* judgment in its favor.  In this case FLC proved the falsity of API's claim of FLC liability on a *prior* contract.  (Bus. & Prof. Code, § 7031, subd. (a) [contractor must be licensed at the time of the performance of the work to bring an action to collect for contracting services]; *MW Erectors, Inc. v. Niederhauser Ornamental & Metal Works Co., Inc.* (2005) 36 Cal.4th 412, 444-445.)

API's claim that a corporation must have a current license to enter into construction contracts to be able to enforce a prior final judgment debt lawfully owed to it is not supported by case law.  " 'The contractor's license statute cannot be used as a shield to avoid a just obligation.' "  (*UDC -Universal Development, L.P. v. CH2M Hill* (2010) 181 Cal.App.4th 10, 26; *Ranchwood Communities Limited Partnership v. Jim Beat Construction Co.* (1996) 49 Cal.App.4th 1397, 1411 [contractor's unlicensed status does not prevent it from enforcing valid rights which were not within the prohibition of Business and Professions Code section 7031]; see also *Holland v. Morse Diesel Internat., Inc.* (2001) 86 Cal.App.4th 1443, 1451, 1453 [unlicensed contractor could bring damage lawsuit unrelated to the prohibition in section 7031]; *Davis Co. v. Superior Court* (1969) 1 Cal.App.3d 156, 159 ["an unlicensed contractor may bring and maintain an action for the breach of a contract not within the scope of the protective purpose of the statute"].)

18.

Moreover, the current contracting restriction API highlights does not change API's status as an FLC judgment debtor. Nor does it change FLC's status as a legally active corporation with the right to enforce prior judgments. Even corporations that are no longer doing business, that are inactive, dissolving, or "winding up" their "affairs," retain the authority to collect judgment debts lawfully owed to them. (*Favila v. Katten Muchin Rosenman, LLP* (2010) 188 Cal.App.4th 189, 212 [citing Corporations Code section 2010].) Even after a corporation has been dissolved, judgments owed to the corporation may be enforced and collected. (Code Civ. Proc., §§ 656, 658.) Consequently, it is not the type of business the corporation currently conducts, but rather the revival of its corporate powers, as here, that gives it the right to enforce judgments. (*Center for Self-Improvement & Community Development v. Lennar Corp.*, *supra*, 173 Cal.App.4th at p. 1553.)

API cites *WSS Industrial Construction v. Great West Contractors, Inc.* (2008) 162 Cal.App.4th 581 where the court held an unlicensed contractor could not sue and recover for work performed on a construction services contract because it was not licensed at the time it performed the work. But that case is not relevant. Here FLC did not sue API. API sued FLC, claiming it was liable on a construction contract of another company. But, as shown by our prior opinion, FLC was not liable as an alter ego defendant. Consequently, API had no valid contract cause of action against FLC. FLC was consequently entitled to attorney fees, not for performing construction contracting services, but rather as a prevailing defendant that had incurred costs and attorney fees in a lawsuit that was not meritorious as to it. (*Jones v. Drain* (1983) 149 Cal.App.3d 484, 490 ["a prevailing

19.

defendant sued for breach of contract containing an attorney's fees provision and having had to defend the contract cause of action is entitled to recover its own attorney's fees and costs . . . *even though the trial court finds no contract existed*" (italics added)].)

Because FLC's corporate status is revived, FLC may enforce the judgment (*Peacock Hill Assn. v. Peacock Lagoon Constr. Co.*, *supra*, 8 Cal.3d at p. 373), and API may not collaterally attack it or our prior decision.  (*Sargon Enterprises, Inc. v. University of Southern California*, *supra*, 215 Cal.App.4th at p. 1506.)

We have reviewed API's remaining contentions and we conclude it has not shown grounds for reversal.

DISPOSITION

The order is affirmed.  Costs on appeal are awarded in favor of respondent.

<u>NOT TO BE PUBLISHED.</u>

GILBERT, P. J.

We concur:

YEGAN, J.

PERREN, J.

20.

Mark S. Borrell, Judge

Superior Court County of Ventura

_____

Law Offices of Ray B. Bowen, Jr., Ray B. Bowen, Jr. for Plaintiff and Appellant.

Semper Law Group, Leonard M. Tavera for Defendant and Respondent.